[Civ. No. 24134. Fourth Dist., Div. One. Apr. 30, 1982.]

In re the Marriage of MARION E. and DARRELL E. McGHEE.
MARION E. McGHEE, Respondent, v.
DARRELL E. McGHEE, Appellant.

COUNSEL

Carmela F. Simoncini for Appellant.

Marshall Y. Hockett for Respondent.

OPINION

WIENER, J.—Pursuant to the oral stipulation between Darrell E. McGhee and his wife Marion, their interlocutory judgment of dissolution entered on June 21, 1978, contained the following: "10. Both parties waive their right to spousal support from the other party except as to spousal support payments provided herein in the event of non-payment of retirement benefits as provided herein. [¶] There shall be no other spousal support other than provided in the following two paragraphs.

"11. Petitioner [Marion] is awarded 38.2% of Respondent's monthly military retirement benefits, presently $675.00 per month and 38.2% of all increases in said benefits. Petitioner's share shall be paid to her by allotment to be arranged by Respondent. [¶] In any month Petitioner does not receive her said share of the retirement, Petitioner shall be

awarded spousal support for said month in an amount identical to the retirement benefits not received by her.

"• • • • • • • • • • • • • • •

"13. The court shall have no jurisdiction to modify in any way the spousal support provisions of this agreement."

When Marion did not receive her pro rata share of the pension for the months of February through May 1980, she obtained a writ of execution for $1,200.[1] Darrell responded by unsuccessfully moving to quash the writ claiming his spousal support obligation ended when Marion remarried on November 10, 1978, and asking repayment of about $4,200 representing his overpayments of support through January 1980, plus reasonable attorney's fees and costs. This appeal followed.

I

Two issues Darrell raises may be disposed of readily.

First, his claim that he is entitled to retroactive application of the holding in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728] was decided adversely to his contention in *In re Marriage of Sheldon* (1981) 124 Cal.App.3d 371, 380 [177 Cal.Rptr. 380] and *In re Marriage of Mahone* (1981) 123 Cal.App.3d 17, 21-22 [176 Cal.Rptr. 274].

Second, his assertion that Code of Civil Procedure section 690.18, subdivision (a)[2] requires quashing of the writ of execution, ignores the distinction between the court's power to issue a writ in the first instance and the specie of property which the Legislature has declared exempt from levy. The latter question, whether certain property falls within one of the stated exemptions of Code of Civil Procedure sections 690.1 to

---

[1]The ex parte court order dated June 10, 1980, for issuance of the writ of execution is based upon Marion's declaration showing $300 unpaid for each of the four months involved.

[2]The effect of Code of Civil Procedure sections 690 and 690.18, subdivision (a) is to exempt all money received by any person as a pension from the United States government *except with regard to a judgment or order for child or spousal support payments.*

690.31, is raised after levy through compliance with the procedures provided by Code of Civil Procedure section 690.50. Here, the record seems to indicate the writ, although issued, was never used, or if used, the record fails to describe what specific property was levied upon. We will not speculate in order to assume the levy was upon Darrell's military pension. Consequently, although we will proceed to discuss whether the spousal support payments of the underlying judgment fall within the exception of Code of Civil Procedure section 690.18, subdivision (a), we do so only for the trial court upon remand on the premise this issue will soon be presented when a levy upon the military pension is made. Obviously, our discussion on this point is unrelated to the question of whether the writ itself should have been quashed.

## II

■ In challenging an attempted levy on his military pension, Darrell makes two arguments. He first contends that the mechanism by which support payments are ordered in the event of nonpayment of periodic community property transfers violates the spirit of federal law which excepts alimony obligations from the usual rule that prohibits the garnishment of military pensions.[3] (See 42 U.S.C. § 659.) Because we must construe the provisions of this federal statute strictly in favor of the judgment debtor (*Roosevelt* v. *Roosevelt* (1981) 117 Cal.App.3d 397, 404 [172 Cal.Rptr. 641]), Darrell argues we should look to the *source* of the obligation for spousal support and not to the label it may be given. He claims changing what is clearly here a division of community property into a spousal support order is contrary to the purpose of the federal law.

Family law practitioners were quick to discover that collection of a spouse's pro rata share of a military pension frequently proved to be difficult unless there was adequate security for that court-ordered obligation. Voluntary compliance with the court order seemed to be directly related to the property which the spouse as judgment creditor could easily and effectively reach. Because the exemption statute (Code Civ. Proc., § 690.18, subd. (a)) contained the means for solving this problem, it was quickly spotted and adopted by creative lawyers. Divided

---

[3] 42 United States Code section 662(c) defines the alimony exception as: "periodic payments of funds for the support and maintenance of the spouse (or former spouse) ... [but] *does not include any payment or transfer of property or its value by an individual to his spouse or former spouse in compliance with any community property settlement, equitable distribution of property, or other division between spouses or former spouses.*" (Italics added.)

pensions would be "supportified" as the technique to deal with recalcitrant military retirees. The failure of the retiree to comply with the court-ordered division of his pension would trigger a spousal support obligation for the identical sum in default, thereby giving the former spouse access to property which would otherwise be exempt. (See 1978 Cal. Family L.Rep. 1081.)

Except for his expressions of frustration directed to the creativity of ingenious lawyers who developed this method of assuring compliance with the court order, Darrell is unable to point to any statutory or policy consideration in support of his argument. Every family law case negotiated to settlement involves a give-and-take process. Why spousal support is waived in certain cases and not in others remains part of the personal decisional choice which each party must make in order to satisfactorily resolve his or her case. Moreover, courts have recognized the close relationship between the amount of a property division and the entitlement to spousal support.[4] (See, e.g., *In re Marriage of Sheldon, supra*, 124 Cal.App.3d at p. 380.)

Here, the agreement by the respective parties, providing for spousal support in the event payments representing division of the property were not made, was clearly a sensible and cost efficient way to deal with the problem of collection. State courts should not be burdened in exemption proceedings under Code of Civil Procedure section 690.50 and be required to scrutinize every spousal support order to determine the psychological or economic basis for its genesis in order to establish whether its source falls within the spirit of the federal legislation. We

[4]*In re Marriage of Maunder* (1976) 57 Cal.App.3d 570 [127 Cal.Rptr. 707] is not to the contrary. *Maunder* involved a divorced spouse who was awarded a one-half interest in her husband's military pension which she was unable to collect by virtue of the garnishment limitations of Code of Civil Procedure section 690.18 and 42 United States Code sections 659 and 662. She accordingly sought a modification of the divorce decree to provide that in the event of nonpayment of her awarded interest in the pension, she would be entitled to an identical sum as spousal support. The court rejected the modification request, noting that a subsequent change in her choice of remedies was insufficient grounds for a modification. (*Id.*, at p. 573.) The court also added that a modification would have been somewhat inequitable since the modifying court would have no postdecree power to order an offsetting cancellation of the unpaid community property award. (*Ibid.*)

The instant case is easily distinguishable. First, it does not involve a subsequent modification but rather a contingency anticipated by the parties in the original decree. Neither party is compelled to do anything different than they bargained for. Similarly, the decree itself implies a cancellation of the community property award to the extent it is satisfied by spousal support garnishments. No postdecree power of the court is involved.

therefore conclude that a support order, valid on its face, is enough to satisfy the exception provided by Code of Civil Procedure section 690.18, subdivision (a), and 42 United States Code sections 659 and 662.

## III

Darrell also argues that even if we treat the payments as legitimate spousal support obligations, Marion's remarriage in 1978 terminated any duty he had to support her since Civil Code section 4801, subdivision (b) requires a written agreement if spousal support is to continue beyond the remarriage of the receiving spouse.[5] Darrell claims he never agreed in writing to such a provision. Referring us to *In re the Marriage of Nicolaides* (1974) 39 Cal.App.3d 192, 202 [114 Cal.Rptr. 56] and *Hilton v. McNitt* (1957) 49 Cal.2d 79, 82 [315 P.2d 1], Darrell states it would have been simple enough for the parties to have expressed themselves on this important issue when they were in court and to have their statements on this subject carried over into the interlocutory judgment. Because the parties should know the difference between "modification" and "termination," words of art among family lawyers, Darrell urges we should not expand the meaning of the former to encompass the latter. (See *Stokes v. Stokes* (1971) 14 Cal.App.3d 470, 471 [92 Cal.Rptr. 468].)

Although Darrell correctly states the general rule on this subject, we believe this case falls within a carefully circumscribed exception to that rule. Here, in light of the purpose the parties wished to accomplish (see *ante*, p. 413), their intention to have spousal support continue beyond Marion's remarriage is obvious.

Statutes which require a writing to make enforceable an agreement between parties, often referred to generically as statutes of frauds, fulfill an important function in sanctifying agreements and facilitating their proof. Nevertheless, such statutes have not been broadly interpreted by California courts because of the inequities which necessarily attend their enforcement. (See *Sunset-Sternau Food Co. v. Bonzi* (1964) 60 Cal.2d 834, 838 [36 Cal.Rptr. 741, 389 P.2d 133]; see also 1

---

[5]Civil Code section 4801, subdivision (b) provides: "Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support or maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party."

Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 197, p. 180.) Although the agreement must be in writing, the writing need only describe the terms of the agreement with "reasonable certainty." (Rest., Contracts, § 207; *Rivers v. Beadle* (1960) 183 Cal.App.2d 691, 696 [7 Cal.Rptr. 170].) Moreover, "the agreement will not be held deficient for the failure to express that which is clearly implied when the writing is interpreted in accordance with the intentions of the parties." (*Hillman v. Koch* (1949) 92 Cal.App.2d 163, 168 [206 P.2d 434].)

■ In the instant case, the purpose of the parties in providing for alternative spousal support payments is evident. Serving as a substitute for unpaid property division payments, Darrell's and Marion's intent that the spousal support continue notwithstanding Marion's remarriage is "clearly implied" in the words of the interlocutory decree. By the very nature of their bargain—an agreed-upon security device to assure continued performance of an order extending until the death of the military retiree—remarriage could not have been intended to terminate that support.

We recognize that explicit exposition of the parties' intent is missing from the interlocutory decree. Under most circumstances, implication of intent would be impossible. But the purpose and structure of this agreement makes it the unusual situation. We therefore hold that this writing constitutes sufficient evidence of the McGhees' agreement to satisfy the requirements of Civil Code section 4801, subdivision (b). Accordingly, should Darrell fail to honor the court-ordered division of his military pension, Marion may use her writ of execution to levy upon his military pension.

*Disposition*

Judgment affirmed.

Cologne, Acting P. J., and Milkes, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.