[Civ. No. 22908. Fourth Dist., Div. One. July 26, 1983.]

In re the Marriage of HORTENSE MARIE and
GEORGE THOMAS CULLEN.
GEORGE THOMAS CULLEN, Appellant, v.
HORTENSE MARIE CULLEN, Appellant.

**COUNSEL**

William E. Blatchley and Blatchley & Blatchley for Appellant Husband.

Fred E. Corbin and Patrick L. Prindle for Appellant Wife.

## OPINION

**STANIFORTH, J.**—Husband George Thomas Cullen appeals a judgment awarding wife Hortense Marie Cullen a 1/2 interest in 13/20ths of what he would have received for longevity retirement as a member of the United States Army if he had served 20 years active service. The husband, in fact, retired after active service of 19 years, 8 months and 27 days; 3 months and 3 days short of 20 years.

## FACTS

George Thomas Cullen and Hortense Marie Cullen were married on April 24, 1948, and separated after 29 years of marriage. When the marriage occurred, the husband had served 6 years 10 months and 23 days in the Army. He continued his Army service until he retired with a 100 percent disability on August 8, 1961. The compensation he received for his disability was classified as a Veterans' Administration disability compensation.

## DISCUSSION

### I

The husband contends this case is controlled by *In re Marriage of Jones* (1975) 13 Cal.3d 457 [119 Cal.Rptr. 108, 531 P.2d 420], and not by the rule of *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96] (*Stenquist I*). "[A] married serviceman's right to disability pay, unlike a vested right to retirement pay, does not comprise a community asset and thus does not become subject to division upon dissolution of the marriage." (*Jones, supra,* at p. 459.) The *Jones* case held the pay was to compensate the veteran for personal anguish caused by the permanent disability as well as the loss of earnings resulting from premature military retirement and the diminished ability to compete in the civilian job market. (*Ibid.*)[1]

---

[1]See also *In re Marriage of Olhausen* (1975) 48 Cal.App.3d 190, 192 [121 Cal.Rptr. 444]; *In re Marriage of Loehr* (1975) 13 Cal.3d 465 [119 Cal.Rptr. 113, 531 P.2d 425], holding military retirement pay is not community property where the retirement has been for disability and occurs before the serviceman has earned a vested right to retire for longevity.

The California Supreme Court in *Stenquist I, supra,* 21 Cal.3d 779, held the husband's disability pay was community property. The court reasoned that to permit a husband by unilateral election to receive a disability pension would permit him to transmute community property into his own separate property and thus would negate the protective philosophy of community property law as set out in previous decisions of the California Supreme Court. In *Stenquist I,* the husband's right to retire for longevity had accrued at the time he elected to retire under disability provisions. By choosing the disability retirement, the husband received a 10 percent higher pension.

Since the decision in *Stenquist I* there have been a series of gyrations in the divisibility upon dissolution of the marriage of military retirement pensions. For example, the United States Supreme Court overtook *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728], and held a federal statute prohibits division of military retirement pensions and preempts state community property law. Following *McCarty,* on February 3, 1981, Congress enacted the Uniformed Services Former Spouses' Protection Act (the Act), Public Law No. 97-252, as an amendment to title 10 of the United States Code. The Act overrules *McCarty:* retirement pay for pay periods beginning after June 25, 1981, may be treated either as property solely of the member or as property of the member and his spouse according to the law of that jurisdiction. (10 U.S.C. § 1408(c)(1).) Thus *McCarty* is no longer the law; *McCarty's* retroactivity is now moot. (*In re Marriage of Buikema* (1983) 139 Cal.App.3d 689 [188 Cal.Rptr. 856].) These gyrations do not dispose of the issue in this case.

## II

The first real hurdle is whether this case is controlled by *In re Marriage of Jones, supra. Jones* involved an eight-year marriage with twelve years of military service at the time of the husband's disability. *Jones* was not concerned with disability granted after the serviceman had earned, by longevity of service, a right to retirement. *Stenquist I* decided a different issue: the court did not permit the serviceman's election of a disability pension to defeat the community interest in his right to a pension based upon longevity.

The trial court order here decreed the wife receive 1/2 interest in 13/20ths of what the husband would have received for longevity retirement if he had served 20 years active service based on a rate E-7. These facts are controlling: The husband suffered an injury while on active duty and retired. On August 8, 1961, the husband's retirement from the United States Army became effective; when he retired he had served only 19 years, 8 months and 27 days of active duty military service and thus his right to retirement for longevity had not accrued as in *Jones.* However, the trial

court took judicial notice of title 10 sections 1201, 1202 and 1405, of the United States Code, and in particular section 1405, which states: "For the purposes of this section, a part of a year that is six months or more is counted as a whole year, and a part of a year that is less than six months is disregarded." Further, the husband chose to waive his United States Army retirement pay and to receive disability pay only after he began receiving the retirement pay. The trial court's decision is based upon a factual finding the husband's right to retire had in fact vested by his service of more than 19 and 1/2 years. Thus, the trial court applied the *Stenquist I* rule since the right to retirement pay had actually vested. The question remains whether the *Stenquist I* rule is still effective law.

### III

The validity of *Stenquist I* is challenged in a parallel case decided this day, *In re Marriage of Stenquist* (1983) *post,* page 430 [193 Cal.Rptr. 587] (*Stenquist II*). Congress, in enacting the Act, provided: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (10 U.S.C. § 1408(c)(1).) However, in defining "disposable retired or retainer pay," Congress specifically excluded "the retired pay of a member retired for disability under chapter 61 of this title." (10 U.S.C. § 1408(a)(4).) Thus, it is argued, Congress has not accorded the states power to apply state community property laws to military disability pay as was done in *Stenquist I*. It is further argued, any attempt by the California Legislature or judicial authorities to exercise power over the husband's disability pay and to whom it may be given is void as an unconstitutional infringement upon the powers of Congress protected by the supremacy clause of the United States Constitution, article VI, clause 2. ■ Under the supremacy clause, the rights and expectancies established by federal law are protected against the operation of state law which might otherwise frustrate and erode federal congressional policy. (See *Ridgway* v. *Ridgway* (1981) 454 U.S. 46, 53-55 [70 L.Ed.2d 39, 46-48, 102 S.Ct. 49, 54-55].)

This argument relies upon the Act's failure to address whether disability retirement pay may or may not be treated by state courts as property of the member and his or her spouse. This omission is read to prohibit the State of California from treating disability retirement pay as community property. ■ Nothing in the Act nor in case law warrants a conclusion that Congress merely by failing to include disability pay in the definition of "disposable retired or retainer pay" intended to deprive the state courts of jurisdiction to determine the individual or community character of disability

retirement pay in family law proceedings. ■ The correct standard for review under the supremacy clause was stated by the United States Supreme Court recently in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, at page 581 [59 L.Ed.2d 1, at page 11, 99 S.Ct. 802]: "On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has 'positively required by direct enactment' that state law be preempted. [Citation.]" *Hisquierdo* also said: "[S]tate interests 'should be overridden by the federal courts only where clear and substantial interests of the National Government, which *cannot* be served consistently with respect for such state interests, will suffer major damage if the state law is applied,'" (*Id.,* at p. 595 [59 L.Ed.2d at p. 19].)

It should be further noted that California law generally treats disability retirement pay as separate property of the Armed Forces. (*In re Marriage of Jones, supra,* 13 Cal.3d 457.) However, here, as in *Stenquist I,* the judgment awards only a portion of the husband's disability retirement pay to his former spouse because he was eligible to receive either disability or nondisability retirement pay. After having received nondisability retirement pay, the husband then waived it and elected to receive the disability pension of a higher amount. The trial court here, as in *Stenquist I,* treated the excess due to the disability retirement as additional compensation attributable to the husband's disability. ■ There is no positive indication of congressional intent to preempt the basic state policy preventing a marital partner from depriving the other spouse of a vested community property right by a unilateral decision based upon the well-recognized rule that disability payments are the separate property of the spouse. The compromise and rule adopted by our Supreme Court in *Stenquist I* appears to give full recognition to the character of the disability payment, but at the same time recognizes the basic right of a spouse not to be deprived of a community asset by the voluntary act of another.

Judgment affirmed.

Cologne, Acting P. J., and Work, J., concurred.

A petition for a rehearing was denied August 15, 1983, and the petition of appellant husband for a hearing by the Supreme Court was denied October 20, 1983.