[Civ. No. 22926. Third Dist. May 31, 1984.]

In re the Marriage of RUTH A. and BILL J. COSTO.
RUTH A. COSTO, Respondent, v.
BILL J. COSTO, Appellant.

### COUNSEL

Jack N. Martin for Appellant.

Jacoby & Meyers and Christopher Peterson for Respondent.

### OPINION

**FIELDS, J.**\*—Appellant Bill Costo appeals from an order of the superior court which held that respondent Ruth Costo, his former spouse, is entitled to a 46 percent share of his Air Force gross monthly retirement pay, including that portion which is a Veterans Administration disability benefit, and determining that he is in arrears in the amount of $6,732.26 as of November 2, 1982. Appellant contends that the portion of his total "retirement" pay which is considered a disability benefit is not subject to community property division.[1] We agree and shall reverse the order of the trial court.

---

\*Assigned by the Chairperson of the Judicial Council.

[1]Appellant does not raise the issue that the trial court's order dated March 11, 1983, also is in error for awarding to respondent a 46 percent interest in appellant's "gross monthly retired pay." Title 10, United States Code, section 1408(c)(1), limits the court's determination to "disposable retired pay."

## FACTS

The petition in this action was originally filed on September 17, 1970, alleging the parties married on August 2, 1942, and separated on August 21, 1970, after 28 years of marriage. Appellant was an enlisted man at the time of marriage, having begun his service career in 1940. After a hearing the trial court issued an intended decision which reflected that appellant had retired from the United States Air Force on December 1, 1963, with a credit for 23 years of service. The court held, however, that no portion of the military retirement pay allowed appellant would be considered community property. Thereafter an interlocutory judgment of dissolution of marriage was entered which divided the community property of the parties and resolved other issues in the matter, but which did not award respondent any portion of the military retirement pay as community property.

Both parties appealed. We remanded, noting that after the trial court's decision the California Supreme Court rendered its decision in *In re Marriage of Fithian* (1974) 10 Cal.3d 592 [111 Cal.Rptr. 369, 517 P.2d 449], holding that military retirement benefits are to be treated as community property. On remand an amendment to the interlocutory judgment was entered which held that 92 percent of appellant's retirement pay is community property, and directed that he pay to respondent 46 percent of his gross retirement pay as it is paid to him. By stipulation of the parties the order was not retroactive and was to be effective July 1, 1975.

In 1973 appellant began suffering severe medical problems, which progressively worsened and resulted in his first surgery in 1976. Subsequent surgery was performed in 1977. He became disabled and unable to work as a result of his medical problems.

Appellant's application to the Veterans Administration for disability benefits, originally filed in 1978, was approved April 30, 1980, after various appeals and reviews. The benefits were made retroactive to December 29, 1978. The Veterans Administration, having determined that appellant suffered a service-connected disability, approved a disability retirement of 50 percent.

The effect of this determination was that appellant would receive a monthly payment from the Veterans Administration due to his service-connected disability.[2] However, since appellant was also entitled to a retirement allow-

---

[2]Title 38, United States Code, section 301, defines the terms "veteran," "period of war" and "chronic disease." Section 331 provides for compensation to any veteran for injury or disease suffered or contracted in the line of duty or for any aggravation of a preexisting condition, provided that it did not result from any wilful misconduct by the veteran.

ance, the law providing for veterans benefits required that he waive a portion of his military retirement pay in an amount equal to his disability benefit.[3] Thus, although appellant's total monthly entitlement remained the same, a portion of it was attributed to the Air Force's military retirement system and a portion of it was attributed to the Veterans Administration.[4]

In June 1981, the United States Supreme Court issued its decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728]. Therein the court held that under the supremacy clause of the federal Constitution military nondisability retirement pay[5] is not subject to division in a dissolution of marriage action. In reliance on *McCarty,* appellant ceased making payments to respondent for her share of his retirement. He was later informed that California law required him to continue the payments, and purports to have recommenced paying them. This matter arose from a hearing to determine whether respondent is entitled to any portion of the disability payment from the Veterans Administration, and the amount of an arrearage due from appellant to respondent. After a hearing the trial court held that respondent is entitled to 46 percent of appellant's gross monthly retirement pay, including that portion which is a disability payment, and determined the arrearage based upon that finding.

### DISCUSSION

In asserting her entitlement to the disability payments received by appellant, respondent relies upon the two *Stenquist* decisions. In *In re Marriage of Stenquist (Stenquist I)* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96],[6] decided before the *McCarty* decision, a portion, designated "disabil-

---

[3]Title 38, United States Code, section 3105, provides: "Any person who is receiving pay pursuant to any provision of law providing retired or retirement pay to persons in the Armed Forces, . . . and who would be eligible to receive pension or compensation under the laws administered by the Veterans' Administration if he were not receiving such retired or retirement pay, shall be entitled to receive such pension or compensation upon the filing by such person with the department by which such retired or retirement pay is paid of a waiver of so much of his retired or retirement pay as is equal in amount to such pension or compensation. . . ."

[4]This may be illustrated with the month of April 1981, when the Veterans Administration payment became effective. During that month appellant was entitled to retirement pay of $1,593.61. His disability payment from the Veterans Administration was $291. He was required to waive $291 of his retirement pay, with the result that his retirement pay from the Air Force was reduced to $1,302.61.

[5]"Although *disability* pensions have been provided to military veterans from the Revolutionary War period to the present, it was not until the War Between the States that Congress enacted the first comprehensive *nondisability* military retirement legislation." (Fn. omitted.) (*McCarty* v. *McCarty* (1981) 453 U.S. 210, 211-212 [69 L.Ed.2d 589, 593, 101 S.Ct. 2728].)

[6]Stenquist apparently received his disability portion pursuant to chapter 61 of title 10, United States Code.

ity" of a retired serviceman's retirement allowance was held payable to his former spouse. There it appeared that the husband had suffered an injury[7] in 1953 which would have entitled him to retire with a 75 percent pension. Nevertheless, he continued to serve until 1970, at which time he could retire with a 65 percent regular pension, or could elect to receive his 75 percent disability pension. Naturally he chose the higher disability retirement pension. He then appeared in his dissolution action and contended that since his pension was due to a disability it could not be considered community property.

The California Supreme Court noted that either of Stenquist's options depended largely on monthly pay at retirement which is a function of longevity of service and rank. (*Stenquist I, supra,* 21 Cal.3d at p. 784.) The court held it would be inconsistent with community property principles to permit a spouse to transmute what would otherwise be community property into separate property by electing to treat his retirement pay as "disability" rather than a pension based upon longevity. (*Ibid.*) Moreover, only a portion of the husband's retirement pay was attributable to disability; as the serviceman approaches normal retirement age the pension, whether disability or based on longevity, serves the purpose of normal retirement pay. (*Id.,* at pp. 786-787.) Accordingly, the court held that only that portion of the retirement pay which exceeded the amount the serviceman would be entitled to based upon longevity, could be considered disability income and hence not divisible community property. (*Id.,* at p. 788.)

Thereafter, the United States Supreme Court decided in the *McCarty* decision that military nondisability retirement pay is not community property subject to division by the state courts. Thus, *Stenquist I* was erroneous. While the California courts consistently maintain that retirement pay based on longevity is deferred compensation regardless of its source, the United States Supreme Court in *McCarty* indicated it may treat military retirement pay differently. The court indicated that a military officer remains a member of the service after retirement and his retirement pay is subject to forfeiture if he engages in certain specified activities. The court went on to state that they were not deciding whether to characterize military retirement pay as deferred compensation because it was clear that the federal statutes had preempted the state court's right to characterize that retirement pay as community. (*McCarty* v. *McCarty, supra,* 453 U.S. at pp. 223-224 [69 L.Ed.2d at p. 600].) The court suggested that giving an ex-spouse more protection was a decision for Congress to make and not for the courts.

Congress, taking its cue from the court and replying to the distressed ex-spouses, quickly enacted the Uniformed Services Former Spouses' Protec-

---

[7]The loss of an arm.

tion Act (the Act) (Pub.L. No. 97-252). Thus title 10, United States Code, section 1408, was enacted to ameliorate the holding of *McCarty*. Section 1408(c)(1) provides: "*Subject to the limitations of this section,* a court may treat *disposable* retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." (Italics added.)

 It is clear that Congress granted to the states the limited right to divide "disposable retired pay." Section (a)(4) of the act removes any ambiguity as to the meaning "disposable" by expressly defining what the state courts may divide. That section provides: " 'Disposable retired or retainer pay' means the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under chapter 61 of this title)[8] *less* amounts which— [¶] (A) are owed by that member to the United States; [¶] (B) are required by law to be and are deducted from the retired or retainer pay of such member, including fines and forfeitures ordered by courts-martial, Federal employment taxes, *and amounts waived in order to receive compensation under* title 5 or *title 38.*" (Italics added.)

There is no ambiguity in the statute. Congress clearly intended to and did exclude from division by the state courts those "*amounts waived in order to receive compensation under . . . title 38.*"

Chapter 11 of title 38, section 301 et seq. of the United States Code provides for compensation for a disability contracted in the line of duty or for an aggravation of a preexisting injury or disease that raises its ugly head after separation from the military service.

Here appellant applied for and was granted disability benefits under title 38 of the United States Code and was required to waive a like portion of his military retirement pay in order to receive those benefits. There is no ambiguity in section 1408(a)(4)(B) of title 10. It requires that this amount must be subtracted from the total retirement pay before the states can divide the remaining "disposable retirement pay."

Congress did not give California the unlimited right to treat military retirement pay in accordance with its general community property laws. It merely provided for the division of disposable pay rather than gross retired

---

[8]Chapter 61 of title 10, section 1201 et seq., concerns retirement pay for physical disability occurring while the member is serving in the military and entitled to his basic pay if he has served 20 years or less.

pay. It specifically provides that no right, title or interest in disposable pay can be sold, assigned, transferred, or otherwise disposed of (including by inheritance) by a spouse or former spouse (10 U.S.C. § 1408(c)(2)), that the parties must have been married for at least 10 years while the member spouse served in the military (§ 1408(d)(2)), and that any payments cease on the death of the spouse (and presumably revert to the military retiree) (§ 1408(d)(4)), and that amounts payable under section 1408(d) may not exceed 50 percent of the disposable retired pay (§ 1408(e)(1)).

The trial court apparently relied on *In re Marriage of Cullen* (1983) 145 Cal.App.3d 424[9] and *In re Marriage of Stenquist* (*Stenquist II*) (1983) 145 Cal.App.3d 430 [193 Cal.Rptr. 587],[10] both cases decided after the enactment of the Uniformed Services Former Spouses' Protection Act. (10 U.S.C. § 1408.) Neither case involves the amounts waived in order to receive compensation under title 38.[11]

■ It is a matter for the legislative branch to determine whether military disability payment is to be divided by the states. It is not for the courts to

---

[9]"Nothing in the Act nor in case law warrants a conclusion that Congress merely by failing to include disability pay in the definition of 'disposable retired or retainer pay' intended to deprive the state courts of jurisdiction to determine the individual or community character of disability retirement pay in family law proceedings." (*In re Marriage of Cullen, supra,* 145 Cal.App.3d 424, 428-429.) Such a statement is in error, since the statute positively requires the exclusion of disability pay from disposable retirement pay. Apparently Cullen retired under chapter 61 of title 10.

[10]"The California Supreme Court in [*Stenquist I*] determined that to permit a spouse, by unilateral election to receive a military disability pension instead of a retirement pension, would allow the spouse to transmute community property into separate property and thereby negate the protective philosophy of the community property law of California." (*In re Marriage of Stenquist* (*Stenquist II*), supra, 145 Cal.App.3d 430, 432.)

"Pending some positive treatment by Congress indicating the inapplicability of this *Stenquist* rule on the Stenquist facts here, the decision should not be held to violate the federal supremacy clause." (*Id.,* at p. 435.)

Congress clearly meant to exclude from disposable retired pay that portion waived under title 38. Apparently Stenquist's retirement was under chapter 61 of title 10.

[11]Even though the instant case may be distinguished from *In re Marriage of Cullen, supra,* 145 Cal.App.3d 414 and *In re Marriage of Stenquist* (*Stenquist II*), supra, 145 Cal.App.3d 430, which involved disability payments under chapter 61 of title 10 (see ante, fn. 8), we question the reasoning of those decisions. The Fourth District Court of Appeal's position was succinctly stated in *Cullen*: "Nothing in the Act nor in case law warrants a conclusion that Congress merely by failing to include disability pay in the definition of 'disposable retired or retainer pay' intended to deprive the state courts of jurisdiction to determine the individual or community character of disability retirement pay in family law proceedings." (*Cullen, supra,* 145 Cal.App.3d at pp. 428-429; see *Stenquist II, supra,* 145 Cal.App.3d at p. 434.)

As we read section 1408(a)(4) of title 10, however, disability retirement pay under chapter 61 is specifically excluded, thereby depriving state courts of jurisdiction, by the following language: "other than the retired pay of a member retired for disability under chapter 61 of this title." The Fourth District seems to be setting up a straw man, namely, the fact that the act fails to *include* disability pay in the definition of "disposable retired or retainer pay," to defeat federal preemption. In our opinion, the argument for federal preemption is not so easily defeated.

decide that such payment is community property because it is deferred compensation or that it is separate property because it is compensation for personal pain and suffering. If it is the latter, there is less reason to award an ex-spouse a portion that continues to be paid even following a subsequent remarriage by the nonservice spouse. Congress has used words leaving no room for court-found ambiguity. ██ Disability pay is to be excluded from division by the states courts.[12]

## CONCLUSION

The dissolution decree in this case awarded respondent 46 percent of appellant's Air Force gross retirement benefits. Under the federal scheme for veterans benefits appellant was entitled to receive certain payments based solely on a service-connected disability after he applied for benefits and proved that he suffered from such a disability. (38 U.S.C. §§ 310, 331.) In order to receive those benefits he was required to waive a like portion of his Air Force retirement benefits. (38 U.S.C. § 3105.) The veterans benefits are nonassignable, are exempt from the claim of creditors and are not subject to attachment, levy, or seizure by or under any legal or equitable process whatsoever, either before or after receipt. (38 U.S.C. § 3101.) And pursuant to the federal scheme for military retirement, which preempts state domestic relations and community property law, a state court may not treat the portion of appellant's military retirement waived in order to receive veterans benefits as community property subject to division. (10 U.S.C. § 1408(a)(4)(B) and (c)(1); *McCarty* v. *McCarty, supra,* 453 U.S. 210 [69 L.Ed.2d 589].) Accordingly, the trial court erred in entering an order requiring appellant to pay to respondent a portion of his veterans benefits and in calculating the amount of the arrearage based upon that finding and order.

The order is reversed and the cause is remanded to the trial court with directions to enter an order holding that respondent's entitlement extends only to 46 percent of appellant's disposable retired pay and does not include a portion of his Veterans Administration disability benefits, and to recalculate the amount of the arrearage, if any, in accordance with this decision.

Regan, Acting P. J., and Sparks, J., concurred.

A petition for a rehearing was denied June 27, 1984.

---

[12]If any inequity arises in an individual case as a result of this decision, the trial court can resolve the matter by making an appropriate award of spousal support.