[Civ. No. 33142. Fourth Dist., Div. Two. Apr. 15, 1985.]

In re the Marriage of HENRIETTE JULIENNE and
STEVEN MASTROPAOLO.
HENRIETTE JULIENNE MASTROPAOLO, Respondent, v.
STEVEN MASTROPAOLO, Appellant.

COUNSEL

John P. Wade for Appellant.

Chase, Rotchford, Drukker & Bogust, Mark C. Schnitzer and Pamela K. Harer for Respondent.

## OPINION

**KAUFMAN, Acting P. J.**—Steven Mastropaolo (husband) appeals from a judgment on reserved issues, attacking awards to his former spouse, Henriette Julienne Mastropaolo (wife), of a 43.65 percent community property interest in that part of his military disability retirement pension that would have been paid to him as longevity retirement benefits had he so elected and $700 per month in spousal support. Husband contends the award to his former wife of a community interest in his military disability retirement pension is contrary to law and the award of $700 per month spousal support constitutes an abuse of discretion.

### Background Facts

The parties were married on October 21, 1953, and separated on September 26, 1972, after more than 19 years of marriage. There is one child of the marriage but the child has reached majority. Husband entered the United States Air Force on March 9, 1951. He retired from the Air Force on December 22, 1972, as 100 percent disabled pursuant to chapter 61, title 10, United States Code sections 1210 and 1201. At the time of his retirement husband had served more than 20 years, was eligible for longevity retirement and could have elected to receive longevity retirement benefits rather than disability retirement benefits. However, the monthly payments under disability retirement exceeded those under longevity retirement by approximately $200 per month, so, of course, husband did not elect longevity retirement.

The issue of marital status and the property and support issues were bifurcated and on about December 15, 1981, an interlocutory judgment was entered dissolving the marriage. Trial on the reserved issues ensued in February 1983.

The parties stipulated that had husband elected to receive longevity retirement benefits the amount of the monthly payment he would have been receiving at the time of trial was $1,549.71. It was further stipulated that since the separation of the parties husband had received $117,825.56 that would have been paid as longevity retirement benefits attributable to the period of the marriage had husband so elected, and, further, that husband had not paid any part of that over to wife.

The trial court determined that portion of the retirement benefits husband could have received as longevity retirement pay was community property except for the part attributable to the period before marriage. Accordingly, the court awarded to wife as her community property share of the retirement benefits a 43.65 percent interest in that part of each future monthly payment that would have been received under a longevity retirement had husband so elected (43.65 percent of $1,549.71 or $676.45 per month at the time of trial). To equalize the division of the community property, including the $117,825.56 in pension benefits received by husband after separation, husband was ordered to pay to wife the sum of $77,590.28. In addition, the court determined husband had improperly disposed of wife's separately owned personal property valued at $26,000 and husband was ordered either to return that property to wife or to pay her its value.

Husband was awarded as his sole and separate property 56.35 percent of what would have been the longevity retirement benefits, all of the retirement benefits attributable to service before marriage and all of the retirement benefits attributable to husband's disability, that is, all retirement benefits over and above what would have been the longevity retirement benefits.

Other facts relevant to a particular issue will be set forth in connection with the discussion of that issue.

### The Spousal Support Order

The judgment orders husband to pay to wife for her support $700 per month until her remarriage, the death of either party or until further order of the court. Husband urges the order manifests an abuse of judicial discretion because the evidence does not support his ability to pay that amount of spousal support. If the division of the military retirement benefits was proper, we agree with husband; otherwise we do not.

There can be little question of wife's need for spousal support in the amount ordered or more. At the time of trial wife, who is approximately 57 years old, was operating a facial beautician business at a loss. Wife's financial declaration showed a total gross monthly income of $1,400, comprised of $650 spousal support pursuant to an earlier court order, $450 rent from residential rental units and $300 a month income from the beautician business. The declaration showed the expenses paid by wife on account of the rental units and her beautician business totaled $1,977, including mortgage payments of $943 and utilities of $254. The declaration showed wife's living expenses, stated modestly for the most part, as $1,275 and in addition listed a number of personal loans upon which it was stated no payments were being made because of wife's financial inability. Wife's health is not

the best; she testified at trial she is suffering from mental disassociation for which she is under a physician's care.

The question is husband's ability to pay. The court made no specific findings relative to this issue and husband requested none. We therefore infer the finding of all facts necessary to the judgment that are supported by the evidence.

Husband's financial declaration showed a gross monthly income of $2,853.55, consisting of social security benefits of $529 a month and military retirement benefits of $2,324.55 a month. Husband claimed as a deduction from his gross monthly income an allotment in the amount of $300 per month, but there is nothing in the record indicating the nature of the allotment payment, and we presume in favor of the judgment this asserted deduction was a voluntary payment of some sort and is to be disregarded.

Husband's itemized expenses as enumerated in his financial declaration amounted to $3,332 per month, including the $650 per month spousal support husband had been paying to wife. The $3,332 figure also included $602 per month husband claimed to be paying on account of two personal loans, an automobile loan, and a cash advance on his Visa account. However, the total balance owing on all of those debts together amounted only to $5,300, so the court may well have largely discounted the claimed payments of $602 per month in recognition of the fact that such debts could in all likelihood be consolidated, greatly reducing the monthly payment, or in any event would be substantially or entirely paid off in about one year's time.[1] If husband's claimed expenses were reduced by only $530 per month, his own figures would show he could pay $700 per month in spousal support, except for one thing.

The one thing is that if the award to wife of a 43.65 percent interest in the portion of the retirement benefits that could have been received as longevity retirement benefits is upheld, husband will be paying over to wife as her share some $676.45 per month, reducing his monthly spendable cash income by that amount. Clearly he would not then have the ability to pay

---

[1]The four debts referred to are shown as follows:

| "CREDITOR'S NAME | | | | FOR | MONTHLY PAYMENT | BALANCE |
|---|---|---|---|---|---|---|
| "Broadway | Nat'l | Bank | | Automobile | $260.00 | $1,500.00 |
| " | " | " | | Personal | 200.00 | 2,000.00 |
| " | " | " | | Personal | 112.00 | 1,200.00 |
| " | " | " | Visa | Cash advance | 30.00 | 600.00" |

spousal support of $700 per month.[2] We conclude the propriety of the present spousal support order depends upon the validity of the division of the military retirement.

*Military Retirement Benefits*

Preliminarily, husband asserts that inasmuch as he is 100 percent disabled for purposes of military service, his military disability retirement is compensation for personal pain and suffering and constitutes separate property. (Cf. *In re Marriage of Jones* (1975) 13 Cal.3d 457, 464 [119 Cal.Rptr. 108, 531 P.2d 420]; disapproved on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) Not so.

As husband concedes, the amount of his disability retirement pension depended on the length of his service and the rank he attained. As explained by the California Supreme Court in *In re Marriage of Stenquist* (*Stenquist I*) (1978) 21 Cal.3d 779, 786-787 [148 Cal.Rptr. 9, 582 P.2d 96]: " '[O]nly a portion of husband's pension benefit payments, though termed "disability payments," is properly allocable to disability. It would be unjust to deprive wife of a valuable property right simply because a misleading label has been affixed to husband's pension fund benefits.' (*In re Marriage of Cavnar* (1976) 62 Cal.App.3d 660, 665 [133 Cal.Rptr. 267]; see Pattiz, *In a Divorce or Dissolution Who Gets the Pension Rights: Domestic Relations Law and Retirement Plans* (1978) 5 Pepperdine L.Rev. 191, 198 and cases there cited.) [Fn. omitted.] [¶] The purpose of disability benefits, as we explained in *Jones,* is primarily to compensate the disabled veteran for 'the loss of earnings resulting from his compelled premature military retirement and from diminished ability to compete in the civilian job market' (13 Cal.3d at p. 459) and secondarily to compensate him for the personal suffering caused by the disability. Military retired pay based on disability, however, does not serve those purposes exclusively. Because it replaces a 'retirement' pension, and is computed in part on the basis of longevity of service and rank at retirement, it also serves the objective of providing support for the serviceman and his spouse after he leaves the service. Moreover, as the veteran approaches normal retirement age, this latter purpose may become the predominate function served by the 'disability' pension."

The case at bench would clearly be governed by the California Supreme Court's decision in *Stenquist I* and the decision of this court in *In re Mar-*

---

[2]This conclusion assumes, of course, actual payment to wife of her share of the pension payments, voluntarily or involuntarily. If wife's share is not being paid to her and if there is no practical means of enforcing payment, husband's spendable cash is not reduced as a practical matter, and wife's need for support is concomitantly increased. (See *In re Marriage of McGhee* (1982) 131 Cal.App.3d 408, 412-413 [182 Cal.Rptr. 456].)

*riage of Mueller* (1977) 70 Cal.App.3d 66 [137 Cal.Rptr. 129]. In both those decisions it was held that although generally speaking disability retirement pensions are the separate property of the employee spouse, when the employee spouse was also eligible to receive regular longevity retirement benefits at the time he or she retired for disability, "[i]t would be inconsistent with community property principles 'to permit [the employee] spouse to transmute what would otherwise be community property into his or her separate property.' [Citation omitted.]" (*In re Marriage of Stenquist, supra,* 21 Cal.3d 779, 786, fn. omitted; *In re Marriage of Mueller, supra,* 70 Cal.App.3d 66, 71-72.)

Husband contends, however, these decisions are no longer good law because federal law governs the characterization and disposition of military retirement benefits and forbids the characterization and disposition of military disability retirement pensions as community property. ▆ Whatever may be the required result with respect to military disability retirement pensions otherwise, we conclude that federal law does not prohibit the disposition ordered by the trial court in the circumstances of this case: where the military spouse retired before dissolution of the marriage and at the time he retired was eligible both for longevity and disability retirement and could have elected to receive longevity retirement benefits. In these circumstances *the nonmilitary spouse had an interest in the retirement benefits recognized under both federal and state law which the military spouse could not destroy by his election to receive disability retirement benefits.*[3]

Husband first contends *Stenquist I* and *Mueller* were in effect overruled by the decision in *McCarty* v. *McCarty* (1981) 453 U.S. 210 [69 L.Ed.2d 589, 101 S.Ct. 2728]. In that case the United States Supreme Court held that military longevity retirement pensions were subject to exclusive federal control and state courts were precluded from dividing them in accordance with state laws on dissolution of marriage. The *McCarty* court suggested that providing additional protection for former spouses of service persons was more appropriately left to Congress than the judiciary.

It must be admitted that the *McCarty* decision was inconsistent in principle with the *Stenquist I* and *Mueller* decisions. However, technically *McCarty* did not involve and was not addressed to disability retirement pensions but rather longevity pensions.

---

[3]Several times in the opinion we shall refer to these circumstances. They are the circumstances that exist in this case and necessarily limit our holding. However, by referring to the circumstance that, here, the retirement occurred before dissolution of the marriage we do not mean to suggest that the absence of that circumstance would make a decisive difference.

More importantly, within months after the *McCarty* decision and presumably in response to the court's invitation in *McCarty,* Congress enacted the Federal Uniformed Services Former Spouse's Protection Act (FUSFSPA) (Pub. L. No. 97-252, 10 U.S.C. § 1408). In section 1408(c)(1) FUSFSPA provides: "Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member *or as property of the member and his spouse in accordance with the law of the jurisdiction of [the] court.*" (Italics added.) The manifest purpose of FUSFSPA was to nullify the *McCarty* decision. (See *Aloy* v. *Mash* (1985) 38 Cal.3d 413, 421, fn. 7 [212 Cal.Rptr. 162, 696 P.2d 656]; *In re Marriage of Buikema* (1983) 139 Cal.App.3d 689, 691 [188 Cal.Rptr. 856]; see also *In re Marriage of Cullen* (1983) 145 Cal.App.3d 424, 427 [193 Cal.Rptr. 590].) So we do not believe *McCarty* may fairly be said to have invalidated *Stenquist I* and *Mueller.*

Next, husband asserts that by expressly excluding payments due under military disability retirement pensions from the definition of "disposable retired or retainer" pay which may be disposed of "in accordance with the law of the jurisdiction of [the] court," FUSFSPA signifies a congressional intention to preempt state law and disallow disposition of military disability retirement pay by state courts in accordance with state law. The question is not an easy one.

FUSFSPA at section 1408(a)(4) defines disposable retired or retainer pay as meaning "the total monthly retired or retainer pay to which a member is entitled (*other than the retired pay of a member retired for disability under chapter 61* of this title) *less amounts* which [¶] . . . (B) are required by law to be and are deducted from the retired or retainer pay of such member, including . . . *amounts waived in order to receive compensation under* title 5 or *title 38; . . .*" (Italics added.) The argument is that the italicized language indicates that disability retirement pay is not to be disposed of by the court upon dissolution of marriage "in accordance with the law of the jurisdiction of such court" as is provided in respect to regular longevity retirement pay in section 1408(c)(1) quoted earlier.

We are not the first to confront this problem. The First Division of this court recently rejected the very contention made by husband in deciding the companion cases of *In re Marriage of Cullen, supra,* 145 Cal.App.3d 424 and *In re Marriage of Stenquist (Stenquist II)* (1983) 145 Cal.App.3d 430 [193 Cal.Rptr. 587]. In *Cullen* the court explained: "[I]n defining 'disposable retired or retainer pay,' Congress specifically excluded 'the retired pay of a member retired for disability under chapter 61 of this title.' (Tit. 10 U.S.C. § 1408(a)(4).) Thus, it is argued, Congress has not accorded the

states power to apply state community property laws to military disability pay as was done in *Stenquist I.* It is further argued, any attempt by the California Legislature or judicial authorities to exercise power over the husband's disability pay and to whom it may be given is void as an unconstitutional infringement upon the powers of Congress protected by the supremacy clause of the United States Constitution, article VI, clause 2. Under the supremacy clause, the rights and expectancies established by federal law are protected against the operation of state law which might otherwise frustrate and erode federal congressional policy. (See *Ridgway* v. *Ridgway* (1981) 454 U.S. 46, 53-55 [70 L.Ed.2d 39, 46-48, 102 S.Ct. 49, 54-55].)

"This argument relies upon the Act's failure to address whether disability retirement pay may or may not be treated by state courts as property of the member and his or her spouse. This omission is read to prohibit the State of California from treating disability retirement pay as community property. Nothing in the Act nor in case law warrants a conclusion that Congress merely by failing to include disability pay in the definition of 'disposable retired or retainer pay' intended to deprive the state courts of jurisdiction to determine the individual or community character of disability retirement pay in family law proceedings. The correct standard for review under the supremacy clause was stated by the United States Supreme Court recently in *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, at page 581 [59 L.Ed.2d 1, at page 11, 99 S.Ct. 802]: 'On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has "positively required by direct enactment" that state law be preempted. [Citation.]' *Hisquierdo* also said: '[S]tate interests "should be overriden by the federal courts only where clear and substantial interests of the National Government, which *cannot* be served consistently with respect for such state interests, will suffer major damage if the state law is applied."' (*Id.,* at p. 595 [59 L.Ed.2d at p. 19], [original italics.]

"It should be further noted that California law generally treats disability retirement pay as separate property of the Armed Forces. (*In re Marriage of Jones* [1975] 13 Cal.3d 457 [119 Cal.Rptr. 108, 531 P.2d 420].) However, here, as in *Stenquist I,* the judgment awards only a portion of the husband's disability retirement pay to his former spouse because he was eligible to receive either disability or nondisability retirement pay. After having received nondisability retirement pay, the husband then waived it and elected to receive the disability pension of a higher amount. The trial court here, as in *Stenquist I,* treated the excess due to the disability retirement as additional compensation attributable to the husband's disability. There is no positive indication of congressional intent to preempt the basic state policy preventing a marital partner from depriving the other spouse of

a vested community property right by a unilateral decision based upon the well-recognized rule that disability payments are the separate property of the spouse. The compromise and rule adopted by our Supreme Court in *Stenquist I* appears to give full recognition to the character of the disability payment, but at the same time recognizes the basic right of a spouse not to be deprived of a community asset by the voluntary act of another." (*In re Marriage of Cullen, supra,* 145 Cal.App.3d at pp. 428-429; accord *In re Marriage of Stenquist, supra,* 145 Cal.App.3d 430, 433-435.)

The reasoning of the court in *Cullen* and the dicta to the same effect in *Stenquist II* were criticized in *In re Marriage of Costo* (1984) 156 Cal.App.3d 781, 787-788 [203 Cal.Rptr. 85], including footnote 11.[4] *Costo,* however, was a case in which the military spouse was granted disability benefits under title 38 of the United States Code and was required to waive a like portion of his longevity retirement pay to receive those benefits. The portion of FUSFSPA previously quoted expressly provides that amounts waived in order to receive compensation under title 38 are excluded from division by the court upon dissolution of marriage. (10 U.S.C. § 1408(a)(4).) As the *Costo* court recognized, therefore, its criticism of *Cullen* and *Stenquist II* was dicta.

We cannot say the *Costo* court's conclusion is totally illogical. Given the *McCarty* decision, FUSFSPA's express exclusion of disability retirement pay from the effects of the act can hardly be regarded as insignificant. However, in view of the general reluctance of both federal and state courts to imply a federal preemption of state law unless it is clearly required, we are inclined to agree with *Cullen* and *Stenquist II.*

In *Hisquierdo* v. *Hisquierdo* (1979) 439 U.S. 572, 581 [59 L.Ed.2d 1, 11, 99 S.Ct. 802] the United States Supreme Court stated that preemption will be found only where it is determined that "Congress has 'positively required by direct enactment' that state law be preempted." The express exclusion of disability retirement pay from FUSFSPA's coverage would appear to be a manifestation of Congress' failure to act rather than a " 'di-

---

[4]Footnote 11 of the *Costo* decision reads in pertinent part: "Even though the instant case may be distinguished from *In re Marriage of Cullen, supra,* 145 Cal.App.3d 424 and *In re Marriage of Stenquist (Stenquist II), supra,* 145 Cal.App.3d 430, which involved disability payments under chapter 61 of title 10 . . ., we question the reasoning of those decisions. . . . [¶] As we read section 1408(a)(4) of title 10 . . . disability retirement pay under chapter 61 is specifically excluded, thereby depriving state courts of jurisdiction, by the following language: 'other than the retired pay of a member retired for disability under chapter 61 of this title.' The Fourth District seems to be setting up a straw man, namely, the fact that the act fails to *include* disability pay in the definition of 'disposable retired or retainer pay,' to defeat federal preemption. In our opinion, the argument for federal preemption is not so easily defeated." (*In re Marriage of Costo, supra,* 156 Cal.App.3d 781, 787, fn. 11, original italics.)

rect enactment' that state law be preempted." Moreover, as observed in *Stenquist II,* "in order to find congressional preemption of a state rule or statute, it is essential to find Congress actually considered and reached some decision concerning the issue involved. (See *United States* v. *Bass* (1971) 404 U.S. 336, 349, 350 [30 L.Ed.2d 488, 497, 498, 92 S.Ct. 515].)" (*In re Marriage of Stenquist, supra,* 145 Cal.App.3d 430, 434.)

However, even if we were to conclude that the *Costo* court's dicta is correct, that would not resolve this case. In the circumstances of this case, namely, where the retirement occurred before the dissolution of the marriage (see fn. 3, *ante*) and at a time when the military spouse was eligible for both longevity and disability retirement and could have elected to receive longevity retirement benefits, under both federal law (10 U.S.C. § 1408(c)(1)) and California law (*In re Marriage of Gillmore* (1981) 29 Cal.3d 418, 422 [174 Cal.Rptr. 493, 629 P.2d 1], including fn. 2; *In re Marriage of Fithian* (1974) 10 Cal.3d 592, 596 [111 Cal.Rptr. 369, 517 P.2d 449] [overruled insofar as it indicated only vested rights were subject to division by *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]) wife would have been entitled to a community property share of the longevity retirement pension for which husband was eligible had he elected to receive longevity retirement benefits. Under California law, in accordance with which the division of longevity retirement benefits would have been made under FUSFSPA, wife's rights were vested. (E.g., *In re Marriage of Gillmore, supra.*) The question is, then, whether preemptive federal law permits a military spouse in the situation of husband to destroy the other spouse's federal statutory right and concomitant state law right by simply accepting a disability retirement and opting not to elect a longevity retirement. We believe not.

In a somewhat analogous situation, although it did not involve the question of federal preemption, this court recently relied on the resulting trust doctrine to effectuate, in effect, a division of state employee death benefits between a former spouse and a surviving spouse even though the benefits were statutorily payable only to the surviving spouse. (*In re Marriage of Becker* (1984) 161 Cal.App.3d 65, 74-75 [207 Cal.Rptr. 392].) Our decision in *Becker* was based on the same principle of law as underlay *Stenquist I* and *Mueller,* that one spouse may not be permitted by exercise of a power wholly within that spouse's control to transmute what would otherwise be the community property of both spouses into his or her separate property. (*In re Marriage of Stenquist, supra,* 21 Cal.3d 779, 786; *In re Marriage of Mueller, supra,* 70 Cal.App.3d 66, 71-72; see also *In re Marriage of Gillmore, supra,* 29 Cal.3d 418, 423, and cases there cited.)

As we explained in *Becker:* "It is true that in this case the surviving spouse is to receive a monthly allowance rather than repayment of the accumulated contributions to the retirement system. However, as we shall explain, she was entitled to receive the accumulated retirement contributions *if she so elected,* and the fact that she is to receive a monthly allowance rather than the accumulated contributions *is a product of her own choice. In essence, the surviving spouse has traded her right to receive the accumulated retirement contributions, out of which former wife would have been entitled to reimbursement of her community share* under *Chirmside* [*Chirmside* v. *Board of Administration* (1983) 143 Cal.App.3d 205 (191 Cal.Rptr. 605)], for a monthly allowance. (Italics added.)

"While the surviving spouse *was statutorily entitled to make the choice she did and committed no wrong in so doing, she has effectively utilized former wife's right to reimbursement to acquire, in part, her monthly allowance.* The situation presented is a classic one for the imposition of a resulting trust. ■ When one person furnishes the money or other thing of value with which property is acquired and title to the property is taken in the name of another, absent the intention of the one to confer a gift upon the other, the titleholder is a trustee upon a resulting trust of the property for the benefit of the person who furnished the money or other thing of value by which the property was acquired. (Civ. Code, § 853; *Keene* v. *Keene* (1962) 57 Cal.2d 657, 665 [21 Cal.Rptr. 593, 371 P.2d 329]; *Viner* v. *Untrecht* (1945) 26 Cal.2d 261, 269 [158 P.2d 3]; *Martin* v. *Kehl* (1983) 145 Cal.App.3d 228, 238-239 [193 Cal.Rptr. 312]; see Rest.2d Trusts, §§ 440, 455; 7 Witkin, Summary of Cal. Law (8th ed. 1974) §§ 126-128, pp. 5484-5486.) Where only a portion of the acquisition price has been furnished, a resulting trust may be established in a fractional interest in the property on a *pro tanto* basis. (*Keene* v. *Keene, supra,* 57 Cal.2d 657, 665; *Watson* v. *Poore* (1941) 18 Cal.2d 302, 317 [115 P.2d 478]; *Juranek* v. *Juranek* (1938) 29 Cal.App.2d 276, 281 [84 P.2d 195]; see Rest.2d Trusts, § 454.)" (*In re Marriage of Becker, supra,* 161 Cal.App.3d 65, 74-75, fn. omitted, italics added.)

■ The same logic should apply here. So far as we are aware the federal courts recognize the resulting trust doctrine in appropriate circumstances, and we are confident they would find it appropriate here to further the congressional intent to protect spouses of service personnel that is manifest in FUSFSPA.

We conclude that the order awarding wife her share of the community property interest in the military retirement benefits is not contrary to law.

### Disposition

Insofar as the judgment awards wife a community property interest in the military retirement pension of husband it is affirmed. Upon condition that the foregoing judgment of affirmance becomes final, that part of the judgment awarding wife $700 per month spousal support is reversed for further proceedings consistent with this opinion. If for any cause the foregoing affirmance should not become final, that part of the trial court judgment awarding wife $700 per month spousal support is affirmed. If pursuant to this appellate judgment the portion of the judgment awarding wife $700 per month spousal support stands reversed and it appears husband has paid spousal support in excess of the amount eventually set, the trial court is directed to credit any such excess amount against the equalizing payment of $77,590.28 specified in the judgment.

McDaniel, J., and Rickles, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 11, 1985.