[L. A. No. 5203. Department Two.—August 25, 1919.]

JOSEPH GAUME, Respondent, v. WILLIAM P. SHEETS et al., Appellants.

[1] VENDOR AND VENDEE—DEFAULT IN CONTRACT PAYMENTS—NOTIFICATION BY VENDOR—TERMINATION OF CONTRACT—RESCISSION BY VENDEES.—Where the vendor under a contract of sale served notice on the vendees stating that he had elected to declare the contract void by reason of their default in the payments to be made under the contract, and informing them that unless they surrendered possession within sixty days that he would commence an action against them to quiet title, such notification was in effect a repudiation of the contract by the vendor and justified a rescission by the vendees where the contract gave the vendees sixty days after such notice in which to make such payment.

[2] ID.—MUTUAL RESCISSION OF CONTRACT—RETURN OF MONEY PAID—RIGHT OF PURCHASERS.—Where a contract of sale has been mutually rescinded, the purchasers are entitled to a return of the money paid by them.

[3] ID.—EXPENDITURES INCURRED IN CLEARING TITLE—REIMBURSEMENT OF VENDOR — CONSTRUCTION OF AGREEMENT — ATTORNEY'S FEES NOT CONTEMPLATED.—An agreement contained in a contract of sale that the purchasers will reimburse the vendor for any and all expenditures of whatsoever nature which may be incurred in clearing the title to the property agreed to be conveyed, does not contemplate the payment of attorney's fees in an action to quiet title by the vendor against the purchasers, but the expenditures of perfecting the title to be tendered to the purchasers upon the fulfillment of their contract.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Reversed.

The facts are stated in the opinion of the court.

Hales & Cunningham for Appellants.

Earl D. Finch for Respondent.

WILBUR, J.—This is an action by a vendor to quiet title against his vendees. The defendants, in their answer and cross-complaint, set out certain arrangements and contracts entered into by the defendant and one Wells at the time of the execution of the contract of sale and as a part of the transaction. Portions of the answer were stricken out and evidence in support of defendants' claims was objected to by plaintiff and objection sustained. For the purpose of this decision we will assume the facts to be as stated by the defendants in those portions of the answer stricken out. Upon such assumption it appears that one K. C. Wells was the owner of the property in question and that plaintiff held a mortgage thereon which was overdue and upon which he was threatening a foreclosure. An agreement was entered into on August 7, 1915, between plaintiff and defendants and Wells, by which the defendants conveyed to Wells some real property owned by them, valued at three thousand dollars, and in consideration thereof and of the agreement of plaintiff to cancel the mortgage thereon amounting to five thousand six hundred dollars, Wells conveyed the property to the plaintiff, and plaintiff entered into an agreement with defendants by which plaintiff agreed to sell and defendants to purchase the land in question for the sum of five thousand six hundred dollars, which amount was to be paid in monthly installments of fifty dollars, payable on the 10th of each month, and, in addition thereto, the entire proceeds of the crops grown on the property in question, until the amount of such proceeds, together with the fifty dollars payable each month, equaled the sum of one thousand two hundred dollars per year, and if such proceeds, together with the payments so made, did not equal said amount, to add thereto sufficient to make the total payment for the year one thousand two hundred dollars. In addition thereto the vendees agreed to take possession of the property and care for it in a good and husbandlike manner, keep the property in good condition of repair, pay all taxes levied and assessed thereon, and to assume and pay the taxes for 1915–16 then a lien on the premises. The vendees entered into possession of the property and cared for the

same, but whether they did so in a good and husbandlike manner was one of the facts in dispute. Defendants defaulted in the payment due April 10, 1916. Time was expressly made the essence of the contract. The agreement in that regard is as follows: "It is understood and agreed that time is the essence of this contract, and should the parties of the second part fail to comply with the terms hereof, then, upon sixty days notice in writing, the party of the first part shall be released from all obligations in law and equity to convey said property, and the parties of the second part shall forfeit all rights thereto and to all money paid under this contract. And the parties of the second part agree to reimburse said party of the first part for any and all expenditures of whatsoever nature which may be incurred by said first party in clearing the title to the property herein agreed to be conveyed, and for the payment of all sums expended by said first party for taxes, assessments, encumbrances, adverse claims, insurance, repair, cultivation, irrigation, fertilization and protection." Thereafter, on April 28, 1916, the vendor served notice upon the vendees, stating that they had defaulted in the payments to be made under the contract; that "by reason of said default the said Joseph Gaume has elected and does hereby elect to declare said agreement null and void and all right which you have acquired thereunder forfeited. You are notified that unless you surrender possession of said premises to said Joseph Gaume or his attorney on or before sixty days from the date hereof, that he will commence an action against you to quiet title to said above described premises, and will ask for a decree against you requiring you to pay all delinquent taxes and assessments, together with reasonable attorneys fees to be determined by the court for the quieting of the title to said premises." Upon the receipt of said notice the vendees surrendered the possession of said property to the vendor. Defendants allege in their answer and cross-complaint, "that because of the acts of the plaintiff, as above specified, the defendants elected to treat the contract set out in paragraph I of plaintiff's complaint as rescinded by the plaintiff," and seek by such answer and cross-complaint to recover the sum of $350 which they had paid in monthly installments on account of the purchase price, and have it declared that the conduct of the plaintiff amounted to a rescission of the contract, and pray for a judg-

ment that they own fifteen forty-thirds of the property, upon the theory that on the cancellation of the contract of sale between the vendor and vendees by mutual consent the vendees are entitled to recover the moneys paid and in addition thereto be relegated to the position they occupied at the time the contract between the vendor and vendees was entered into, namely, that having paid Wells fifteen forty-thirds of the purchase price of the land they are, therefore, the beneficiaries of a resulting trust in 'the property *pro tanto*. The vendees seek to excuse the nonpayment of the fifty dollar installment due April 10th by claiming that they were prevented from making such payment by reason of the fact that the vendor served a notice upon a packing-house to which the vendees had delivered a part of the crop, directing the owner of such packing-house not to pay to the vendees the proceeds, amounting to fifty-two dollars, derived from the sale of oranges raised upon the place, but to pay the same to the vendor. This claim, however, is not sustainable, for the reason that the vendor was entitled to the amount as a part of the proceeds of the crop in any event, and for the further reason that the state and county taxes for 1915–16 were then due, and by the terms of the contract were payable by the vendee, and the further fact that the vendee had assigned the claim due from the packing-house to Wells in payment of a note executed by the vendees to Wells at the time of the original transaction for the repayment to Wells of the state and county taxes of 1914–15 then paid by Wells. In other words, on April 10, 1916, there was due from the vendees not only the fifty dollar installment, but also the taxes for 1915–16, and such portion of the proceeds derived from the sale of oranges grown upon the place as were then available. Consequently any interference by the vendor with the collection of the fifty-two dollars cannot be considered as excusing the default of the vendees in making the payment referred to. Under the ordinary provision that time was of the essence of the contract, the effect of this failure of the vendees to make the payments due was, at the option of the vendor, to terminate the rights of the vendees. The contract, however, contained the unusual proviso for a sixty days' notice in writing; that after such sixty days the parties of the first part shall be released from all obligation in law and equity to convey said property. The evident purpose of such pro-

vision of. the contract was to give sixty days' grace, after notice to the vendees, in which to comply with the contract. The notice given, however, declares that "the vendor has elected and does hereby elect to declare said · contract null and void and all rights which you have acquired thereunder forfeited." This construction of the notice as declaring an immediate forfeiture is in accord with the allegations of plaintiff's complaint as to the nature and effect of such notice, as follows, to wit: "That on or about the twenty-eighth day of April, 1916, plaintiff served upon the defendants a notice in writing that he had declared the said contract null and void, and would recognize no further interest of the defendants, or any of them, in the premises hereinbefore described." The notice also demands that the vendees surrender possession "on or before sixty days from the date hereof," in default of which "an action will be commenced to quiet title." There is no suggestion in the notice that the vendees, by paying the installments of the purchase price then due within a period of sixty days, could retain their rights in the property and in the contract. **[1]** This notification that the contract was already null and void and that the possession should be surrendered within sixty days was in effect a repudiation of the contract by the vendor and justified a rescission by the vendees. They alleged, in their pleadings, that they elected to treat the contract as rescinded by the plaintiffs and that they surrendered possession of the property to the vendor and that the vendor immediately took possession thereof. It is true that subsequent to the taking of possession by the vendor one of the vendees, according to the testimony of the vendor, stated that they were unable to make further payment thereon. The case then comes within the principle stated in *Glock* v. *Howard,* 123 Cal. 1, 13, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713, 717], where it is said: "It has been said that after the vendee's breach the vendor may agree to a mutual abandonment and rescission, in which last instance, and in which alone, the vendee in default would be entitled to a repayment of his money." (See, also, *Phelps* v. *Brown,* 95 Cal. 574, [30 Pac. 774] ; *Easton* v. *Cressey,* 100 Cal. 75, [34 Pac. 622] ; *Lemle* v. *Barry, ante,* p. 6, [183 Pac. 148].)

The taking of the possession of the property by the vendor, on his demand, was particularly significant under the cir-

cumstances as indicating a mutual abandonment of the contract. In *Bray* v. *Lowery,* 163 Cal. 256, [124 Pac. 1004], a vendor of personal property under a conditional contract of sale wrongfully retook possession of the property before the vendee was in default, and it was held that the vendee, without any formal rescission of the contract, could treat the contract as abandoned and annulled by the vendor, and maintain an action against him for money had and received, and recover the portion of the purchase price theretofore paid. [2] The contract in this case having been mutually rescinded or abandoned, the vendees were entitled to a return of the money paid by them and such rights as grow out of the fact that the contract has been rescinded. In that event the vendees having, according to their allegations, paid three thousand dollars to Wells on account of the purchase price thereof, are entitled to have a resulting trust declared in said property for the proportion thereof which the amount paid by them to Wells bears to the amount of the purchase price paid by plaintiff to Wells, if the court should find upon a new trial any amount was so paid.

The order striking out those portions of the defendants' answer alleging the terms of the agreement whereby defendants transferred property worth three thousand dollars in connection with the transfer of the property from Wells to plaintiff was erroneous. Leave should be given to the defendants to amend their answer and cross-complaint if they so desire.

In view of the necessity of a new trial in this action it is necessary to pass upon another point raised by appellants with reference to the payment of attorneys' fees, as this question will arise upon a subsequent trial in the event that the plaintiff is again successful. The trial court allowed attorneys' fees to the vendor for the prosecution of this action to quiet title against the vendees. [3] Under the above-quoted provision of the contract requiring the payment by the vendees of "all expenditures of whatsoever nature which may be incurred by the first party in clearing the title to the property herein agreed to be conveyed." In that regard it may be said that, in our opinion, such provision of the contract did not contemplate the payment of attorneys' fees in this action, but the expenditures of perfecting the title to be tendered to the vendees upon the fulfillment of their contract.

The judgment is reversed and the trial court instructed to grant defendants leave to amend their pleadings if they so desire.

Lennon, J., and Melvin, J., concurred.