161 Cal.App.3d 65 (1984)
207 Cal. Rptr. 392
In re the Marriage of ARLENE M. and ALEXANDER M. BECKER.
ARLENE M. BECKER, Respondent,
v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM et al., Appellants.
Docket No. 29418.
Court of Appeals of California, Fourth District, Division Two.
October 23, 1984.
*67 COUNSEL
Cynthia G. Besemer and Robert G. Petrovich for Appellants.
Michael H. Clepper for Respondent.
OPINION
KAUFMAN, Acting P.J.
The Public Employees' Retirement System (PERS) and Johanne M. Becker, the surviving spouse of Alexander M. Becker, deceased, and special administrator of his estate, appeal from an order of the Riverside Superior Court commanding PERS to pay to the decedent's divorced former wife, Arlene M. Becker, a sum equal to one-half of the contributions to the retirement system made by the decedent during his marriage to Arlene M. Becker and prior to their separation.

*68 Facts

Alexander M. Becker (the decedent) and Arlene M. Becker (former wife) were married in June 1943 and separated in January 1979. The decedent became employed by the California Department of Corrections in 1965 and as an incident of his employment became a member of the Public Employees' Retirement System. At the time of separation, the decedent had been employed by the Department of Corrections for approximately 14 years. Following the separation, the decedent continued in that employment for approximately three additional years until his death on February 5, 1982, at which time he was fifty-nine years old. Throughout the employment monthly contributions to the retirement system were deducted from the decedent's salary. Over the entire period of employment these contributions totaled approximately $25,000.
After the separation of former wife and the decedent a dissolution action was instituted by former wife. The amended interlocutory judgment of dissolution of marriage filed August 6, 1980, and made final on October 21, 1980, did not purport to dispose of the retirement benefits; rather, it provided in relevant part: "The Court will reserve jurisdiction over Respondent's [the decedent's] Retirement Benefits and any other assets not disposed of herein."[1]
At the time of separation, the decedent was at least 50 years old and had been employed more than 5 years. His and former wife's rights to retirement benefits were therefore vested under the Public Employees' Retirement Law. The record does not disclose the date of trial of the dissolution action, but sometime after the decedent and former wife separated the decedent completed 15 years of service and thereupon became eligible to retire, although he did not do so. Although the record does not disclose the dates of those events either, more than one year before his death the decedent married Johanne M. Becker and designated her as his "named beneficiary" in accordance with prescribed procedures.
On March 19, 1982, shortly after the decedent's death, former wife filed in the dissolution action an order to show cause for determination of her *69 interest in the retirement benefits. PERS was joined as a party and Johanne M. Becker, the decedent's surviving spouse, appeared in the proceeding in the place and stead of the decedent. Initially she appeared in her capacity as special administrator of the decedent's estate. However, at oral argument in this appeal it was stipulated that her appearance would be deemed to be in her personal capacity as well.
After hearing, the trial court issued an order in which it found, inter alia, "that the total amount available is $38,053.63, which represents the Respondent's [the decedent's] contributions plus six months of salary"; that all "contributions to the retirement plan prior to January 1, 1979, are community property of [the decedent] and [former wife]," and that all "contributions, after the date of January 1, 1979, as well as any other payments due as a death benefit, for example, the equivalent of six months salary, are not community property but instead, represent ... sole and separate property."
The dispositive portion of the order reads: "If the Public Employees' Retirement System is able to determine the amount of Respondent's [the decedent's] contributions from the date of initial employment to January 1, 1979, and any interest thereon, then 50% of said amount shall be paid directly to Petitioner, ARLENE M. BECKER...."

Contentions, Issues and Discussion
According to the uncontradicted representations made to the trial court by the representative of PERS, Johanne M. Becker as the decedent's surviving spouse is to receive a monthly allowance payable until she dies or remarries pursuant to Government Code section 21365.6.[2] PERS and Johanne M. Becker in her several capacities (collectively appellants) contend that, although the court's order requires PERS to pay to former wife her one-half share of the community contributions to the retirement fund, in effect the court has ordered PERS to pay to former wife a portion of a statutorily provided survivor's benefit in disregard and contravention of the governing statutes which provide that such benefit shall be paid to the surviving spouse (§§ 21365.5, 21365.6).
As so interpreted, the court's order is also violative, appellants contend, of the so-called "terminable interest doctrine" established in Benson v. City of Los Angeles (1963) 60 Cal.2d 355 [33 Cal. Rptr. 257, 384 P.2d 649], Waite v. Waite (1972) 6 Cal.3d 461 [99 Cal. Rptr. 325, 492 P.2d 13], and *70 their progeny. Those decisions, while recognizing a community property interest in the pension rights of the employee spouse during his or her lifetime, hold that the community interest terminates upon the death of the employee spouse (or, as enlarged in Waite, the death of the nonemployee spouse) and does not extend to death benefits payable solely to the surviving spouse of the employee spouse under the statutes, ordinances or provisions governing the program. (E.g., In re Marriage of Samuels (1979) 96 Cal. App.3d 122, 129 [158 Cal. Rptr. 38]; In re Marriage of Andreen (1978) 76 Cal. App.3d 667, 674 [143 Cal. Rptr. 94]; see Chirmside v. Board of Administration (1983) 143 Cal. App.3d 205, 208-209 [191 Cal. Rptr. 605].)
For her part former wife relies on the principle that an employee spouse may not defeat the community interest of the nonemployee spouse in retirement benefits by electing not to retire (In re Marriage of Gillmore (1981) 29 Cal.3d 418, 423 [174 Cal. Rptr. 493, 629 P.2d 1]; In re Marriage of Scott (1984) 156 Cal. App.3d 251, 253 [202 Cal. Rptr. 716]), electing some optional payment program more beneficial to himself (In re Marriage of Stenquist (1978) 21 Cal.3d 779, 786 [148 Cal. Rptr. 9, 582 P.2d 96]; In re Marriage of Mueller (1977) 70 Cal. App.3d 66, 71-72 [137 Cal. Rptr. 129]), or in some circumstances, designating a beneficiary other than the nonemployee spouse (see Chirmside v. Board of Administration, supra, 143 Cal. App.3d 205, 211-212; cf. Jorgensen v. Cranston (1962) 211 Cal. App.2d 292, 300 [27 Cal. Rptr. 297]). The contention appears to be that in electing not to retire when he was eligible to do so and in substituting Johanne Becker for Arlene Becker as "named beneficiary" the decedent made a prohibited gift of a community asset without the consent of former wife (Civ. Code, § 5125) or at least an impermissible choice impairing her vested interests in the retirement program.
Former wife also contends the order of the trial court is not contrary to either the governing statutes or the "terminable interest doctrine" because it orders PERS to pay to former wife only her share of the community property contributions to the retirement fund and specifically does not order PERS to pay to former wife any part of the allowance payable to the surviving spouse under the statutes.
Should her other contentions not prevail, former wife also challenges the soundness and continued vitality of the "terminable interest doctrine" and urges it should be repudiated.
We have concluded that the order of the court does in effect constitute an order that PERS pay to former wife a portion of the survivor's benefit and that that order cannot stand. We further conclude that the decedent made no impermissible election not to retire and that his designation of Johanne *71 M. Becker as his "named beneficiary" was of no consequence inasmuch as the survivor's benefit is payable under the governing statutes solely to the surviving spouse. However, we further conclude that because the surviving spouse could have elected to receive the basic death benefit, consisting primarily of a refund of the contributions made to the retirement fund, in which case former wife would have been entitled to her community share thereof, and because the surviving spouse in effect purchased her lifetime annuity in part with former wife's community share of the retirement contributions, she will hold a pro tanto portion of each monthly payment received by her from PERS as a resulting trustee for former wife.

I. The Statutory Background

Upon the death of a state employee at least fifty years of age and who has served at least five years but has not retired, his surviving spouse is entitled to receive one of several death benefits. Section 21361 prescribes "the basic death benefit." It provides in relevant part: "The basic death benefit shall consist of: [¶] (a) The accumulated contributions of the member. [Italics added.] [¶] (b) If the member is not an insured member, or is an insured member eligible for service retirement, an amount, provided from contributions by the state, or a contracting agency, equal to one-twelfth of the annual compensation earnable by the deceased during the 12 months immediately preceding his death, multiplied by the number of completed years of current service credited to the member, but not to exceed one-half of such compensation." In other words, a maximum of six months salary.
With exceptions not here pertinent, section 21365.5 provides that upon the death of a member "in circumstances in which the basic death benefit is payable," the surviving spouse shall receive until death or remarriage a monthly allowance equal to one-half of the retirement allowance the member would have been entitled to receive if he or she had retired for service on the date of his or her death. The seventh paragraph of section 21365.5 provides in part: "The allowance provided by this section shall be paid in lieu of the basic death benefit but a person ... qualifying for the allowance may elect before the first payment on account of it to receive such basic death benefit in lieu of the allowance." (Italics added.) The ninth paragraph of the same section provides in part: "If the total of the payments made hereunder is less than the basic death benefit ... otherwise payable on account of the member's death, the amount of the basic death benefit less any payments made pursuant to this section shall be paid in a lump sum" to specified beneficiaries. In other words, the amount payable as the basic death benefit, including the "accumulated contributions of the member," will be paid in all events.
*72 As of the decedent's date of death, February 5, 1982, section 21365.6 read in relevant part: "The surviving spouse of a member who has attained age 50, and who is eligible to receive an allowance pursuant to Section 21365.5 [ante], shall instead receive an allowance which is equal to the amount that the member would have received if the member had been retired from service on the date of death and had elected optional settlement 2." (Italics added.) The allowance under section 21365.6 is also payable as long as the surviving spouse lives or until remarriage, but again, if the amount paid in the form of an allowance has not at least equalled the amount payable under the basic death benefit, a lump sum payment of the balance is made to specified beneficiaries the same as under section 21365.5.

II. No Prohibited Election or Gift

Before reaching the more meaty issues, we observe that the decedent's election not to retire at the time he first became eligible to do so did not constitute a prohibited election defeating the community interest of former wife in the retirement benefits. (1) The nonemployee spouse may not as a legal proposition compel the employee spouse to retire at the time of first eligibility in order that the nonemployee spouse may realize his or her community interest in the retirement benefits. When the employee spouse becomes eligible to retire but elects not to do so, the nonemployee spouse may apply to the court for an immediate disposition of any community interest in retirements benefits over which jurisdiction has been reserved. (In re Marriage of Gillmore, supra, 29 Cal.3d 418, 428; In re Marriage of Scott, supra, 156 Cal. App.3d 251, 254.)
Neither did the decedent make a prohibited gift of any community property interest in the retirement benefits by designating Johanne M. Becker as his "named beneficiary." Ignoring for the moment the "terminable interest doctrine," it was not the decedent's naming his new wife as his "named beneficiary" that resulted in her being entitled to the monthly allowance. (2) Both sections 21365.5 and 21365.6 expressly provide for payment of the monthly allowance to the surviving spouse, and the statutory beneficiary takes precedence over any beneficiary named by the deceased member. (Beck v. Board of Administration (1982) 136 Cal. App.3d 1031, 1034-1036 [186 Cal. Rptr. 574]; Lee v. Board of Administration (1982) 130 Cal. App.3d 122, 130 [181 Cal. Rptr. 754].)

III. Nature and Propriety of the Order

(3a) As previously indicated the trial court's order purports to require PERS to pay to former wife 50 percent of the decedent's contributions to the retirement system during his marriage to former wife and before their *73 separation. It studiously avoids ordering the payment to former wife of any part of the monthly allowance payable to the surviving spouse. Nevertheless, that is the necessary effect of the order. The retirement system is obligated to pay either the "basic death benefit," which includes a refund of the member's contributions, or a monthly allowance, not both. Since the surviving spouse did not elect to receive the "basic death benefit" (see discussion, infra), the benefit payable is a monthly allowance and the monthly allowance payments constitute the only source of money from which the ordered payment to former wife could be made.
Notwithstanding our conclusion as to its effect, we are not at all certain the trial court's order would be irreconcilable with the "terminable interest doctrine" as established in Benson v. City of Los Angeles, supra, 60 Cal.2d 355, Waite v. Waite, supra, 6 Cal.3d 461, and their progeny, especially since the payments to former wife were limited to reimbursement of her half of the community property contributions. The policy bases for the "terminable interest doctrine" are (1) that the employer is entitled to certainty concerning its obligations under its retirement program and must not be required to do more than is required by its contract with the employee spouse (see Benson v. City of Los Angeles, supra, 60 Cal.2d 355, 360) and (2) that the employer is entitled to maintain flexibility in the retirement program so it can effect reasonable modifications and changes (see Benson v. City of Los Angeles, supra, 60 Cal.2d 355, 361-362; Chirmside v. Board of Administration, supra, 143 Cal. App.3d 205, 208). It is difficult to perceive how reimbursement to former wife of her share of the community property retirement contributions out of the monthly allowance to be paid to the surviving spouse would seriously impinge upon these policy objectives. No one's interest would thereby be enlarged nor would the obligations of PERS be increased except by the issuance of two checks rather than one.
Indeed, until January 1, 1982, section 21201.5 provided: "If a person other than the surviving spouse of a deceased member of this system is entitled under the community property laws of this State to a portion of the benefit provided in this chapter for the said surviving spouse, any monthly payments provided in this chapter in lieu of or as an actuarial equivalent of the benefit for said surviving spouse, shall be reduced by an amount which bears the same ratio to the monthly amount otherwise payable, as the portion to which such other person is entitled under said community property laws bears to the actuarial equivalent of the monthly amounts otherwise payable." (Stats. 1951, ch. 1680, § 8, p. 3878.) Unhappily, this statute was repealed effective January 1, 1982, 36 days before the decedent's death. (See Stats. 1981, ch. 609, § 17, p. 2340.)
However, it is unnecessary for us to resolve definitively whether or not the trial court's order might be reconciled with the "terminable interest *74 doctrine." The statutory prescription that the monthly allowance be paid to the surviving spouse is mandatory (§§ 21365.5, 21365.6; Beck v. Board of Administration, supra, 136 Cal. App.3d 1031, 1034-1036; Lee v. Board of Administration, supra, 130 Cal. App.3d 122, 130), and the board may not be required to pay any part of the allowance to anyone not specified by the statute. (Ibid.)

IV. Pro Tanto Resulting Trust

The foregoing conclusion, however, does not end the case. In Chirmside v. Board of Administration, supra, 143 Cal. App.3d 205, because the employee-spouse had elected an optional settlement at the time he retired, the benefits payable to his "named beneficiary" at the time of his subsequent death were limited to the then remaining unrepaid contributions to the retirement system made during his employment. On the basis of the "terminable interest doctrine" the trial court concluded the former wife was not entitled to anything and the "named beneficiary" was entitled to the remaining death benefits. The Court of Appeal reversed, holding the former wife was entitled to payment of her community share of the remaining unrepaid contributions. The court stated: "Since we are concerned solely with the employee's accumulated contributions to the pension system, the public entity's interest in maintaining the `flexibility' of its pension program, found so compelling in Benson (60 Cal.2d at p. 362 [33 Cal. Rptr. 257, 384 P.2d 649]), is not present here. The only question is the disposition to be made of the withheld salary remaining in William's PERS account. We are not determining how PERS is to distribute a surviving spouse's pension or any other pension. The case is more analogous to the distribution of a savings account containing community funds than the cited pension cases." (143 Cal. App.3d at p. 210.)
Appellants assert that Chirmside is not controlling because here the benefits payable consist of a monthly allowance, not the reimbursement of unrepaid contributions to the retirement system. They are correct that Chirmside is not controlling, but they mistakenly fail to recognize that Chirmside clearly points to the path to be followed: were the retirement contributions refunded, former wife would be entitled to her community share.
It is true that in this case the surviving spouse is to receive a monthly allowance rather than repayment of the accumulated contributions to the retirement system. However, as we shall explain, she was entitled to receive the accumulated retirement contributions if she so elected, and the fact that she is to receive a monthly allowance rather than the accumulated contributions is a product of her own choice. In essence, the surviving spouse has traded her right to receive the accumulated retirement contributions, out of *75 which former wife would have been entitled to reimbursement of her community share under Chirmside, for a monthly allowance.
While the surviving spouse was statutorily entitled to make the choice she did and committed no wrong in so doing, she has effectively utilized former wife's right to reimbursement to acquire, in part, her monthly allowance. The situation presented is a classic one for the imposition of a resulting trust. (4a) When one person furnishes the money or other thing of value with which property is acquired and title to the property is taken in the name of another, absent the intention of the one to confer a gift upon the other, the titleholder is a trustee upon a resulting trust of the property for the benefit of the person who furnished the money or other thing of value by which the property was acquired. (Civ. Code, § 853; Keene v. Keene (1962) 57 Cal.2d 657, 665 [21 Cal. Rptr. 593, 371 P.2d 329]; Viner v. Untrecht (1945) 26 Cal.2d 261, 269 [158 P.2d 3]; Martin v. Kehl (1983) 145 Cal. App.3d 228, 238-239 [193 Cal. Rptr. 312]; see Rest.2d Trusts, §§ 440, 455; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, §§ 126-128, pp. 5484-5486.) Where only a portion of the acquisition price has been furnished, a resulting trust may be established in a fractional interest in the property on a pro tanto basis. (Keene v. Keene, supra, 57 Cal.2d 657, 665; Watson v. Poore (1941) 18 Cal.2d 302, 317 [115 P.2d 478]; Juranek v. Juranek (1938) 29 Cal. App.2d 276, 281 [84 P.2d 195]; see Rest.2d Trusts, § 454.)
(3b), (5) (See fn. 3.) We shall therefore direct the trial court on remand to enter an order declaring that a pro tanto portion of each monthly payment received by the surviving spouse is held by her as a trustee upon a resulting trust for the benefit of former wife.[3]
(6) During the proceedings in the trial court the representative of PERS opined to the court that because the surviving spouse was to receive her monthly allowance pursuant to section 21365.6 rather than 21365.5, she *76 could not have made an election to receive the "basic death benefit." However, we do not agree with that analysis; our reading of the statutes persuades us that the Legislature fully intended the surviving spouse qualifying for an allowance under section 21365.6 to have the alternative right to elect to receive the "basic death benefit," and we are confirmed in this view by a recent amendment to section 21365.6 expressly so providing.
The analysis of the representative of PERS at trial as we understand it was as follows: Section 21365.5 expressly provided in part at the time of trial: "The allowance provided by this section shall be paid in lieu of the basic death benefit but a person ... qualifying for the allowance may elect before the first payment on account of it to receive such basic death benefit in lieu of the allowance." However, section 21365.6 contained no such provision at the time of trial; rather it provided: "The surviving spouse of a member who has attained age 50, and who is eligible to receive an allowance pursuant to Section 21365.5, shall instead receive an allowance" pursuant to section 21365.6. The conclusion drawn by the representative of PERS from the difference in language was that section 21365.5 permitted an election, whereas section 21365.6 did not.
That analysis failed to read the two sections together and take into account the language of section 21365.6 authorizing the allowance provided by it only to a surviving spouse "who is eligible to receive an allowance pursuant to Section 21365.5." To be "eligible to receive an allowance pursuant to Section 21365.5" the surviving spouse must have qualified for an allowance under section 21365.5 and must not have elected in lieu to receive the basic death benefit. (§ 21365.5.) Thus, by electing to receive the basic death benefit pursuant to section 21365.5, an otherwise eligible surviving spouse could effectively make herself ineligible to receive an allowance under section 21365.5 and thereby at the same time disqualify herself for an allowance under section 21365.6. She therefore had the right to elect to receive the "basic death benefit," including the return of accumulated retirement contributions, under both sections 21365.5 and 21365.6 even though section 21365.6 contained no express provision for an election.
In 1982 the Legislature amended section 21365.6 to provide expressly for such an election: "The allowance provided by this section shall be paid in lieu of the basic death benefit, but the surviving spouse qualifying for the allowance may elect before the first payment on account of it to receive such basic death benefit in lieu of the allowance." (Stats. 1982, ch. 863, § 4, p. 3214.) In our view this amendment was only declaratory of the preexisting legislative intent and effected no substantive change.
Only two questions remain: (1) the appropriate formula for establishing the portion of each payment to be held in trust by surviving spouse and (2) *77 whether the payments to former spouse are to be limited in amount to the dollar amount of her community share of the accumulated contributions, either with or without interest.
(4b) The answer to question (2) lies in the nature of a pro tanto resulting trust. The person who furnished the money or other thing of value with which the property was partially acquired is deemed to be the beneficial owner of a pro tanto portion of the whole property, not just so much of the property as will repay or reimburse that person for the money or value furnished. (See Gaume v. Sheets (1919) 181 Cal. 119, 122, 124 [183 P. 535]; Moultrie v. Wright (1908) 154 Cal. 520, 523 [98 P. 257]; Case v. Codding (1869) 38 Cal. 191, 193; Juranek v. Juranek, supra, 29 Cal. App.2d 276, 281.) Accordingly, here, the resulting trust will be impressed on a portion of each payment of the allowance received by the surviving spouse so long as she continues to receive the allowance. Of course, should the surviving spouse die or remarry leaving unrepaid retirement contributions in the PERS account, the trust will terminate but former spouse will be entitled to her share of the remaining unrepaid contributions in accordance with the Chirmside decision.
Turning finally to the formula, we conclude that the portion of each payment to the surviving spouse to be impressed with the trust should be equal to one-half of the amount established by multiplying the dollar amount of the monthly allowance times a fraction, the numerator of which equals the dollar amount contributed by the decedent and Arlene M. Becker during their marriage and prior to their separation and the denominator of which is a number equal to the dollar amount that would have been payable as part of the "basic death benefit" under subdivision (b) of section 21361 plus the total dollar amount of contributions made by the decedent during his lifetime including any community share of either Arlene M. Becker or Johanne M. Becker. (See Gaume v. Sheets, supra, 181 Cal. 119, 124; Juranek v. Juranek, supra, 29 Cal. App.2d 276, 281; Rest.2d Trusts, § 455, com. b.)

Disposition
The order is reversed with directions to the trial court to enter judgment in its capacity as a court of general jurisdiction imposing a resulting trust on a pro tanto portion of the proceeds of each monthly payment to the surviving spouse on account of the allowance being or to be received by her from PERS as a result of the death of Alexander M. Becker in accordance *78 with the foregoing opinion. In the interests of justice all parties shall bear their own respective costs on appeal.
McDaniel, J., and Rickles, J., concurred.
The petition of appellant Johanne Becker for a hearing by the Supreme Court was denied January 17, 1985.
NOTES
[1] Although we are not informed whether or not this order resulted from it, the records in several recent cases have made reference to a standing unwritten policy of the Riverside Superior Court not to dispose of unmatured community property interests in retirement benefits in dissolution actions, but, rather, to reserve jurisdiction over them in all cases. If the order in this case did in fact result from that indiscriminate policy of the Riverside Superior Court, we are constrained to point out that the policy is contrary to decisions of this court and the California Supreme Court and will frequently produce mischievous and unfortunate results, including the unnecessary expenditure of effort and resources by the litigants and the courts, of which this case would be an example.
[2] All further statutory references will be to the Government Code unless otherwise specified.
[3] We recognize a theoretical impediment to so directing the trial court. This proceeding is pending in the Riverside Superior Court sitting as a family law court, a court of limited jurisdiction. However, all parties fully participated in the proceeding with a view to obtaining final disposition and to that end, as previously indicated, as late as oral argument on appeal, Johanne M. Becker has stipulated that her appearance may be deemed an appearance not only in her representative capacity but in her personal capacity as well. Under the circumstances, we believe the procedure followed was sufficient to invoke the general jurisdiction of the Riverside Superior Court. (Cf. Estate of Gilmaker (1962) 57 Cal.2d 627, 630 [21 Cal. Rptr. 585, 371 P.2d 321].)

We also recognize that a resulting theory of recovery was not advanced by former wife in the trial court. However, it is settled that a change in theory is permitted on appeal when a question of law only is presented on the facts appearing in the record. (Martin v. Kehl, supra, 145 Cal. App.3d 228, 239, citing Ward v. Taggart (1959) 51 Cal.2d 736, 742 [336 P.2d 534].)