[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1333 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1334 
OPINION
Both "Husband" and "Wife" appeal from the trial court's decision dividing their interests in Husband's California Public Employees' Retirement System (PERS) retirement allowance and survivor benefit. Husband contends that the trial court abused its discretion in concluding that repurchased service credits for Husband's years of service to his employer prior to his marriage to Wife were community property. The opportunity to repurchase these service credits arose when Husband's previous spouse, Dalia, withdrew the retirement contributions in her portion of Husband's PERS retirement account. These service credits were repurchased with community funds during the marriage. Husband also maintains that the trial court abused its discretion in assigning to Wife the entire survivor benefit, of which she was the irrevocable beneficiary, in exchange for her reimbursing Husband for the monthly cost (a reduction in Husband's retirement allowance) of the survivor benefit. The value of the survivor benefit far exceeded its cost. Wife's cross-appeal asserts that, if we credit either of Husband's contentions, we should order the trial court to reconsider the amount of spousal support and attorney's fees awarded to her.[1] We conclude that the trial court did not abuse its discretion in concluding that the repurchased service credits were community property, but it did abuse its discretion in awarding the entire survivor benefit to Wife. Because we reverse and remand this matter solely for the trial court to properly apportion the survivor benefit in accordance with our directions, we find no basis for the trial court to reconsider spousal support or attorney's fees.
 I. California Public Employees' Retirement System One of the benefits offered to many public employees in California is membership in PERS. PERS membership provides a public employee with eligibility for a retirement allowance for life based on the employee's age and years of service at the time of retirement. *Page 1335 
 When a former spouse acquires a portion of a PERS member's PERS retirement benefit account in a dissolution, the former spouse may withdraw that portion of the contributions and interest and obtain a refund of those monies, but by doing so the former spouse waives all of his or her rights in the member's PERS retirement benefits. (Gov. Code, § 21292.) After such a refund, "any service credit eligible for purchase . . . shall be deemed the exclusive property of the member." (Gov. Code, § 21294, subd. (e); see id., § 21292.) The member may repurchase those service credits by redepositing the withdrawn contributions along with the interest that would have been credited on the withdrawn contributions. (Gov. Code, § 20750.)
 At the time of retirement, a PERS member may either elect an unmodified retirement allowance, under which the retiree will receive full monthly PERS retirement allowance payments, or select from a group of options under which the retiree's monthly retirement allowance payments are reduced so that a selected beneficiary may receive "survivor benefit" payments after the retiree's death, if the beneficiary survives the retiree.[2]
 One of the options for a PERS retiree is known as Option 2. Option 2 is "the right to have a retirement allowance paid a member until his or her death and thereafter to his or her beneficiary for life." (Gov. Code, § 21456.) An Option 2 election and the designation of the beneficiary are generally irrevocable after retirement.[3] (Gov. Code, §§ 21454, 21456, 21492.) The beneficiary of an "Option 2" survivor benefit need not be the retiree's spouse or even the retiree's relative.
 II. Factual Background Husband became employed as a Monterey County deputy sheriff in March 1971. One of the benefits of his employment was PERS membership. During a portion of his employment by Monterey County, Husband was married to his second wife, Dalia. Husband divorced Dalia in 1991. Dalia ultimately received an interest in Husband's PERS retirement as part of the division of *Page 1336 their community property. Husband, who remained employed by Monterey County, married Wife in November 1994. In 1995, Dalia's interest in Husband's PERS retirement was cashed out by her withdrawal of her share of Husband's contributions and interest from his PERS retirement account.
 Husband subsequently arranged to repurchase the service credits represented by the contributions and interest withdrawn by Dalia. The repurchase was accomplished by monthly deductions from his paychecks (and later his retirement allowance payments) beginning in 1997 and continuing throughout his marriage to Wife. The total of these deductions during Husband's marriage to Wife was $31,938.92.[4]
 In 1998, Husband was elected sheriff. In February 2002, Husband's years of service and age qualified him for the maximum level of retirement benefits. In November 2002, Husband selected Option 2 PERS retirement as his choice of retirement plans, and he irrevocably named Wife as the beneficiary of the survivor benefit funded by Option 2.[5]
Husband retired in December 2002.
 III. Procedural Background Husband filed for dissolution of his marriage to Wife in January 2004.[6] In August 2004, Wife filed a motion seeking spousal support and attorney's fees. At Wife's request, PERS was joined in the action in March 2005.
 At the June 2005 trial, Husband's expert testified that the actuarial value of Husband's stream of retirement allowance payments under Option 2, not including the value of the survivor benefit, was $1,724,817. The value of Husband's retirement allowance had been largely funded by Monterey County, and only about $250,000 was attributable to Husband's contributions and the interest on those contributions.
 Husband's expert testified that the value of Husband's retirement allowance was 6.6 percent lower than it would have been if he had selected the unmodified retirement allowance rather than Option 2.[7]
Husband's monthly *Page 1337 retirement allowance was, at the time of trial, approximately $684 less than the unmodified retirement allowance would have been. The actuarial value of the reduction in Husband's stream of monthly retirement allowance payments was $121,875. At the time of trial, the survivor benefit was projected to pay Wife $4,496 per month for the remainder of her lifetime after Husband's death.
 Husband's expert characterized the survivor benefit as "a life insurance policy." He testified that the actuarial value of the survivor benefit was $403,291. Husband's expert added the actuarial value of Husband's retirement allowance to the actuarial value of the survivor benefit and came up with a total actuarial value of $2,128,108. He determined that Wife's community property share, based solely on the years of the marriage, was $250,000. Husband's expert asserted that Wife should be required to make an equalizing payment to Husband of $153,300 to account for the difference between her community property share of the total actuarial value ($250,000) and the actuarial value of the survivor benefit ($403,291). His opinion was that Wife was not entitled to any share of Husband's retirement allowance because she would receive far more than her community property share of Husband's retirement benefits as a whole by receiving the entire survivor benefit.
 In calculating Wife's share of Husband's retirement benefits, Husband's expert concluded that the repurchased service credits were Husband's separate property. His position was that the community had only a right to reimbursement of the community's funds used to purchase the service credits. However, when he was asked whether the community might have a "pro tanto" interest, he said he "would leave that to the lawyers
 Wife's expert reviewed the calculations of Husband's expert and concluded that those calculations were accurate. However, he disagreed with Husband's proposed method of division. Wife's expert testified that the cost of the survivor benefit to Husband was $122,000, and he suggested that the survivor benefit be divided by requiring Wife to reimburse Husband for that cost in return for her receiving the entire survivor benefit. He characterized his disagreement with Husband's expert as "a legal issue[,] . . . not an actuarial issue."
 Wife's expert did not address the issue of the repurchased service credits in his trial testimony, but he did address this issue in a posttrial declaration that was considered by the trial court. He asserted that the portion of the *Page 1338 repurchased service credits that was purchased during the marriage with community funds should be considered community property. Wife's expert asserted that 66.5 percent of the 8.677 years of service credits were purchased with community funds during the marriage, and he therefore concluded that 5.77 of those repurchased years were community property. Husband's expert had concluded that Wife's interest in Husband's retirement benefits was 11.75 percent, based on 7.3 years of service during the marriage. Wife's expert concluded that the addition of 5.77 years of additional community property interest would make Wife's share 21.03 percent.
 Judgment was entered in February 2006. The court concluded that the repurchase of 5.8 years of service credits during the marriage with community funds resulted in those service credits being community property and increased the community share of Husband's retirement benefits to 41.22 percent. The court determined that Wife's share of Husband's retirement benefits was therefore 20.61 percent. The court found that the survivor benefit was not a "gift" to Wife, but Wife was nevertheless entitled to the entire survivor benefit. "To fairly apportion the cost of the benefit, the court orders that the monthly cost of this benefit, which is approximately $680.00 per month, will be paid entirely by Wife, commencing at the time of her first payment of her share of the PERS retirement by a reduction of this sum from her monthly benefit otherwise payable. This will make Husband whole, and provide him with a monthly benefit for his lifetime equal to that which would have been paid to him had he not ever elected the Option 2 survivor benefits." "The court finds that an equal and fair division of the survivor benefits will occur if these benefits are paid for by Wife and Husband receives his share of PERS in an amount equal to the unmodified allowance had he not chosen Option 2."
 The court set spousal support at $1,500 per month, but it directed that Husband continue to pay Wife $3,065 per month until Wife began receiving her share of Husband's monthly retirement allowance payments.[8]
The court retained jurisdiction over spousal support "until July 1, 2008, at which time, Husband's obligation to pay support shall terminate." The court ordered Husband to pay $10,000 toward Wife's attorney's fees and costs. Husband filed a timely notice of appeal, and Wife filed a notice of cross-appeal.
 IV. Husband's Appeal Both of the issues raised by Husband concern the trial court's allocation between the parties of the parties' interests in Husband's PERS retirement *Page 1339 benefits. Husband contends that the trial court abused its discretion in concluding that the repurchased service credits were community property and in allocating the entire survivor benefit to Wife in return for her payment of the "cost" of that benefit.
 We review the trial court's rulings for abuse of discretion. (In reMarriage of Quay (1993) 18 Cal.App.4th 961, 966 [22 Cal.Rptr.2d 537].) "`"The scope of discretion always resides in the particular law being applied, i.e., in the `legal principles governing the subject of [the] action. . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an `abuse' of discretion."`" (Katiuzhinsky v. Perry (2007)152 Cal.App.4th 1288, 1294 [62 Cal.Rptr.3d 309].)
 A. Repurchased Service Credits It was undisputed that the community estate included the portion of Husband's retirement benefits that arose from Husband's 7.3 years of service to his employer during his marriage to Wife.[9] Husband claims that the trial court abused its discretion in concluding that the community estate also included the 5.8 years of service credit repurchased during the marriage with community funds. He argues that the repurchased service credits were primarily his separate property because these service credits were available for repurchase only because he had provided these separate property years of service to his employer prior to his marriage to Wife.[10]
 "The characterization of property as community or separate determines its division upon dissolution of the marriage. Each spouse owns a one-half interest in all community property. (§ 751.) In general, community property is divided equally in the aggregate when the marriage ends. (§ 2550; see §§ 2600-2604.) However, separate property is not subject to a similar division, and belongs only to the owner spouse. (§ 752.) [¶] In determining the community or separate nature of property, the statutory scheme starts from the premise that all property acquired during the marriage is community *Page 1340 property. (§ 760.) As pertinent here, this general rule, or `presumption' (§ 802), covers both real property (§ 760) and employee retirement plans." (In re Marriage of Benson (2005) 36 Cal.4th 1096,1102-1103 [32 Cal.Rptr.3d 471, 116 P.3d 1152].)
 "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." (Fam. Code, § 760.) On the other hand, "[a]ll property owned by the person before marriage" is separate property. (Fam. Code, § 770, subd. (a).) "Property acquired by purchase during a marriage is presumed to be community property, and the burden is on the spouse asserting its separate character to overcome the presumption." (See v. See (1966)64 Cal.2d 778, 783 [51 Cal.Rptr. 888, 415 P.2d 776].) "`[I]f separate and community property or funds are commingled in such a manner that it is impossible to trace the source of the property or funds, the whole will be treated as community property. . . .'" (In re Marriage of Mix
(1975) 14 Cal.3d 604, 611 [122 Cal.Rptr. 79, 536 P.2d 479].)
 The repurchase of the service credits in this case indisputably involved the commingling of separate and community property. The community property interest in the repurchased service credits arose from the use of community funds during the marriage to purchase the service credits.[11] Husband's separate property interest arose from his premarital service to his employer which created his right to repurchase the service credits. Since it was Husband who asserted that the repurchased service credits were his separate property, he had the burden of overcoming the community property presumption that arose from the fact that the service credits were purchased during the marriage with community funds. He had to prove that the repurchased service credits could be traced to a separate property source.
 Although it was undisputed that Husband had contributed separate property to the repurchase of the service credits, the evidence produced by Husband at trial did not indisputably establish what proportion of the value of the repurchased service credits was attributable to his separate property as opposed to the community's funds. His expert testified that the repurchased service credits should be considered separate property with the community entitled to only reimbursement of its contribution, or at most a minimal pro tanto interest. Husband's expert claimed that, since much of the value of Husband's retirement benefits derived from his employer's contributions *Page 1341 rather than from his monetary contributions, his separate property service to his employer was the primary source of the repurchased service credits, rather than the community funds used to repurchase those service credits. However, Husband's expert did not unequivocally trace a particular value or proportion of the repurchased service credits to Husband's separate property contribution. Instead, he rather broadly indicated that the service credits had a value of about 10 times their cost, from which an inference could have been drawn that
 90 percent of the value of the service credits was attributable to Husband's years of service. On the other hand, Wife's expert testified that the repurchased service credits were entirely community property because they were purchased during the marriage with community funds.
 Our deferential standard of review is very important to our analysis of Husband's contention. The trial court was required to begin with thepresumption that the repurchased service credits were community property. Husband had the burden of proving that any or all of the retirement benefits attributable to the repurchased service credits could be traced to a separate property source. Although Husband did produce evidence from his expert that the trial court could have credited, the court was not required to credit this evidence. The trial court was vested with the power to credit or discredit Husband's evidence. If it discredited Husband's evidence, it could properly conclude that the community property presumption applicable to property purchased during a marriage with community funds had not been rebutted, and therefore the repurchased service credits were community property.
 Husband claims that the court was obligated to characterize the repurchased service credits as separate property and order that the community be reimbursed for its contribution. He is mistaken. The trial court could properly conclude that reimbursement was not appropriate here. "The person who furnished the money or other thing of value with which the property was partially acquired is deemed to be the beneficial owner of a pro tanto portion of the whole property, not just so much of the property as will repay or reimburse that person for the money or value furnished." (In re Marriage of Becker (1984) 161 Cal.App.3d 65, 77
[207 Cal.Rptr. 392] [PERS pension case].) Since the community furnished the money with which the repurchased service credits were acquired, the community was the beneficial owner of, at the very least, some portion of the whole property, and was not entitled merely to reimbursement of its contribution. Since Husband failed to meet his burden by demonstrating that a specific portion of the retirement benefits arising from the repurchased service credits was attributable to a separate property source, the trial court could properly conclude that these retirement benefits were presumptively community property.
 Husband complains that the trial court's determination that the repurchased service credits were entirely community property is not "`reasonabl[y] and *Page 1342 fairly representative of the relative contributions of the community and separate estates.'" (In re Marriage of Lehman (1998) 18 Cal.4th 169, 187
[74 Cal.Rptr.2d 825, 955 P.2d 451] (Lehman).) The trial court's decision was necessarily based on the evidence that was presented to it and thatit credited. Husband had the burden of proving the relative value of the separate and community contributions to the repurchased service credits. The trial court did not abuse its discretion in refusing to credit Husband's expert's broad implication that 90 percent of the retirement benefits attributable to the repurchased service credits could be traced to Husband's separate property contribution. Husband produced no other evidence that reliably established how the retirement benefits attributable to the repurchased service credits could be apportioned to reflect the relative contributions of the separate and community estates. Consequently, the trial court was entitled to rely on the presumption and conclude that the repurchased service credits, which had been purchased during the marriage with community funds, were community property.
 B. Survivor Benefit Husband contends that the trial court abused its discretion in awarding Wife the entire survivor benefit without requiring her to make an equalizing payment to him for half of the actuarial value of the survivor benefit. He maintains that simply requiring Wife to pay thecost to Husband of the survivor benefit out of her share of his retirement allowance was not a proper division of the community and separate property interests in this asset. While we do not agree with Husband that the trial court was required to order Wife to make an equalizing payment to him for half of the actuarial value of the survivor benefit, we are convinced that the trial court abused its discretion in its apportionment of the survivor benefit.
 "[T]he court shall . . . divide the community estate of the parties equally." (Fam. Code, § 2550.) "[T]he court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following: [¶] (1) Order the disposition of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550." (Fam. Code, § 2610, subd. (a).)
 "The superior court must apportion an employee spouse's retirement benefits between the community property interest of the employee spouse and the nonemployee spouse and any separate property interest of the employee spouse alone. . . . Whatever the method that it may use, however, the superior court must arrive at a result that is `reasonable and fairly representative of the *Page 1343 relative contributions of the community and separate estates.'" (Lehman,supra, 18 Cal.4th at p. 187.)
 Family Code sections 2550 and 2610 and Lehman required the trial court to apportion the retirement allowance and the survivor benefit between the community and separate interests, and to equally divide the community interest. The trial court concluded that the community's interest in Husband's PERS retirement benefits was 41.22 percent of those benefits, with the remainder being Husband's separate interest. This calculation was based on applying the time rule to the service credits accrued and repurchased during the marriage. After making this determination of the relative contributions of the separate and community estates to Husband's retirement benefits, the trial court properly divided the community's interest in Husband's monthly retirement allowance payments by awarding Wife 20.61 percent of each retirement allowance payment.
 However, the trial court did not apply the same method of division to the survivor benefit, even though the relative contributions of the separate and community estates were the same with respect to the survivor benefit as they were with respect to the retirement allowance. Instead, the court allocated 100 percent of the survivor benefit to Wife in exchange for Wife compensating Husband for this benefit by surrendering a portion of her share of his retirement allowance equal to the cost of the survivor benefit. This allocation necessarily equated the cost of the survivor benefit with its value. Yet the undisputed evidence at trial established that the value of the survivor benefit far exceeded itscost. The actuarial value of the survivor benefit payments was $403,291; the actuarial value of the reduction in Husband's retirement allowance payments, which the court characterized as the cost of the survivor benefit, was $121,875. Hence, the trial court's allocation was based on a faulty premise. By compensating Husband for only the cost of the survivor benefit, when its value far exceeded its cost, the trial court failed to reach a result that was fairly representative of the relative contributions of the separate and community estates.
 Husband was entitled to an allocation that fairly represented the fact that his separate and community interest in the survivor benefit was 79.39 percent. We do not question the trial court's decision to reject Husband's proposal that Wife receive the entire survivor benefit in exchange for compensating Husband for his share of the survivor benefit's presentactuarial value. The trial court could have concluded that the various contingencies surrounding the survivor benefit weighed against charging Wife with its present actuarial value. "It is the trial court's duty `to weigh and assign the relative risks involved' in dividing retirement pay that is subject to a variety *Page 1344 of contingencies." (In re Marriage of Smith (2007) 148 Cal.App.4th 1115,1128 [56 Cal.Rptr.3d 341].)
 Nevertheless, the trial court's rejection of Husband's proposal did not mean that the court could select a method of apportionment that did not reasonably reflect the relative contributions of the separate and community estates, as required by Lehman. The trial court had already selected a straightforward method of apportioning the separate and community interests in Husband's retirement allowance. No concerns about future contingencies would have arisen if the trial court had simply divided the survivor benefit in the same manner as it had divided the retirement allowance. "Any [PERS] allowance may be paid directly to a trust." (Gov. Code, § 21256.) The trial court could have achieved a result that was representative of the relative contributions of the separate and community estates by ordering that the monthly survivor benefit payments, when and if they came due, would be paid into a trust from which Wife would receive 20.61 percent of each payment with the remainder of each payment to go to Husband's estate, heirs, or other designee.
 While the trial court had discretion to select a fair method of apportioning the survivor benefit, it did not have discretion to select a method that did not comply with Family Code sections 2550 and 2610 andLehman. The method selected by the trial court for apportioning the survivor benefit did not comply with the law, but its method for apportioning the retirement allowance, in which the parties' interests were the same, did comply. Under these circumstances, we are convinced that the appropriate remedy is to order the trial court either to apportion the survivor benefit using the same method the court selected for apportioning the retirement allowance, with a trust utilized to direct the payment of Husband's share to his estate, heirs or designated beneficiary; or to select another method of apportioning the survivor benefit that complies with Family Code sections 2550 and 2610 andLehman.
 V. Wife's Cross-appeal Wife contends in her cross-appeal that, if we reverse the trial court's judgment, we should order the court to reconsider both spousal support and attorney's fees on remand. As we remand this matter solely for apportionment of the survivor benefit in accordance with our directions, it is inconceivable that Wife's current resources will be impacted by our remand. Hence, there is no need for the trial court to reconsider spousal support or attorney's fees on remand. *Page 1345 
 VI. Disposition The judgment is reversed, and the matter is remanded to the trial court with directions either to issue an order directing the establishment of a trust into which the survivor benefit payments shall be paid and providing that Wife shall receive 20.61 percent of each survivor benefit payment, and 79.39 percent of each payment shall be paid to Husband's estate, heirs or other designee; or to select another method of apportioning the survivor benefit that complies with Family Code sections 2550 and 2610 and Lehman. Husband shall recover his costs on appeal.
 Bamattre-Manoukian, Acting P. J., and Duffy, J., concurred.
[1] Wife initially contended that the trial court erred in terminating jurisdiction for spousal support, but she has withdrawn that argument.
[2] If a retiree selects an unmodified retirement allowance, a "survivor continuance" benefit may be payable upon the member's death to the member's surviving spouse.
[3] There is one exception to this irrevocability. If the beneficiary is a spouse, the marriage is dissolved, and "the judgment dividing the community property awards the total interest in [PERS] to the member . . .," the member may elect to have his or her retirement allowance adjusted back to what it would have been if the member had not elected Option 2 or may be permitted to name a different beneficiary. (Gov. Code, § 21456; see §§ 21454, 21462, 21492.) As Wife was not willing to waive all interest in Husband's PERS pension, Husband was not entitled to revoke his Option 2 election or change the beneficiary of the survivor benefit.
[4] The deductions continued after Husband's separation from Wife, as Husband needed to repay a total of $42,555.64 to repurchase the service credits.
[5] Husband is 12 years older than Wife. The calculation of the cost of the survivor benefit is based on the age and gender of the designated beneficiary.
[6] Husband asserted that the couple separated in August 2003, but the trial court found that the date of separation was in January 2004.
[7] Husband's expert noted that "the taxpayers" subsidize the survivor benefit, so that Husband's retirement allowance is not reduced by the full amount that would actually be required to fully fund the survivor benefit.
[8] Husband had been paying $3,065 per month in spousal support to Wife pending judgment in the dissolution action.
[9] Although Husband was employed for a longer period than 7.3 years during his marriage to Wife, his retirement benefits reached their maximum in February 2002, 7.3 years after he married Wife in November 1994. At that point, Husband had 31 years of service. Thus, under the time rule, as applied by the trial court, the community share of his retirement benefits based on his years of service during the marriage was 23.5 percent (7.3 divided by 31 equals .235), and Wife's share of his retirement benefits based on these years of service was 11.75 percent. There was no dispute about these numbers.
[10] 1 8.677 years of service credit were repurchased, but the trial court found that community funds were utilized to fund the repurchase of only 5.8 of these years of service credit. The parties do not directly challenge the court's determination that 5.8 of the 8.677 years of service credit were purchased during the marriage with community funds.
[11] It is also of note that Husband's right to repurchase the service credits arose during his marriage to Wife. He married Wife in 1994. In 1995, Dalia withdrew her share of Husband's contributions. It was only at that point that Husband acquired the right to repurchase the service credits represented by the withdrawn contributions. *Page 1346